In the Matter of the Application of HARRY H. EVENS, Individually and as Comptroller of the City of Binghamton, et al., Appellants, against THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE SECOND DISTRICT, Defendant, and WILLIAM G. PHELPS, as Receiver of the BINGHAMTON RAILWAY COMPANY, Respondent.

**Public Service Commission — railroads — prohibition — power of Commission to regulate fares on consolidated street railway — writ of prohibition properly denied.**

1. The powers of the Public Service Commission to regulate fares on the consolidated street railways in the city of Binghamton depend upon the nature of the franchises granted to the original companies and the subsequent action of the city authorities in modifying or abrogating their conditions.

2. Upon examination of the franchises granted to eight street railway companies operating in and about the city of Binghamton, since consolidated into one, held, as to seven thereof, that on the face of their franchises the rate of fare is subject to regulation by the Public Service Commission and as to the other that a formal contract entered into with the city relative to a change in motive power and the maintenance and construction of electric passenger railroads in the city modified its franchise, and where consents subsequently given by the city for extensions of its lines were granted upon express conditions of compliance with provisions of the Railroad Law reserving to the Legislature the right to regulate fares, it cannot be successfully maintained that the power of the Legislature did not extend to other portions of the same route. The Public Service Commission has jurisdiction, therefore, to determine rates of fare on the consolidated railway and a writ of prohibition was properly denied.

*Matter of Evens* v. *Public Service Commission*, 214 App. Div. 122, affirmed.

(Argued June 22, 1927; decided October 4, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 21, 1925, which reversed an order of Special Term granting a motion for an absolute writ of pro-

hibition forbidding the defendants from taking further proceedings on an application for permission to increase passenger fares on street railways and denied said motion.

*John J. Irving, Corporation Counsel (Herbert H. Ray* of counsel), for appellants.   The Public Service Commission has no power to abrogate or modify a fare provision contained in a consent of a municipality to the construction of a street railroad.   (*Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244; 227 N. Y. 601; *People ex rel. West Side Railway Co.* v. *Barnard,* 110 N. Y. 548; *Matter of Niagara Falls,* 229 N. Y. 333; *People ex rel. Village of Glens Falls* v. *Public Service Comm.,* 225 N. Y. 216; *Matter of International Ry. Co.* v. *Public Service Comm.,* 226 N. Y. 474; *People ex rel. City of New York* v. *Nixon,* 229 N. Y. 356; *Village of Mamaroneck* v. *Public Service Comm.,* 208 App. Div. 330; 238 N. Y. 588.)   The consent by the city to the use of electric power did not abolish the term of the franchise relative to a five-cent fare.   (*Finucane* v. *Board of Education,* 190 N. Y. 76; *Utley* v. *Donaldson,* 94 U. S. 29.)

*Thomas J. Keenan* for respondent.   There are no conditions or restrictions in any of the franchises granted by the city of Binghamton to the predecessors of the Binghamton Railway Company which prevent the Public Service Commission from passing upon the receiver's application for an increase in fare on the lines of the Binghamton Railway Company.   (*Matter of Village of Mamaroneck* v. *Public Service Comm.,* 208 App. Div. 330; 238 N. Y. 588; *Matter of Quinby* v. *Public Service Comm.,* 223 N. Y. 244; 227 N. Y. 601; *People ex rel. Village of South Glens Falls* v. *Public Service Comm.,* 225 N. Y. 216; *Matter of International R. Co.* v. *Public Service Comm.,* 226 N. Y. 474; *Matter of City of Niagara Falls* v. *Public Service Comm.,* 229 N. Y. 333; *People ex rel. Garrison* v. *Nixon,* 229 N. Y. 575.)   The provisions with

15

reference to rates of fare ceased to be applicable when the roads of the Binghamton Railway Company's predecessors ceased to be operated by animal power. (*Westinghouse Electric & Manufacturing Co.* v. *Binghamton Ry. Co.,* 225 Fed. Rep. 395; *Moore* v. *City of Albany,* 88 N. Y. 396.) The city consented to the regulation of rates by the Legislature when it consented to the building of the extensions because such consents expressly provided that the provisions of the Railroad Law pertinent thereto should be complied with. (*Matter of International Ry. Co.* v. *Public Service Comm.,* 226 N. Y. 474; *Village of Goshen* v. *Wallkill Transit Co.,* 21 State Dept. Rep. 325; *Matter of United Traction Co.* v. *Public Service Comm.,* 219 App. Div. 95.)

CRANE, J. On December 6, 1901, the Binghamton Railway Company, of which the defendant, respondent, William G. Phelps, is receiver, was created by the consolidation of the Binghamton Railroad Company and the Binghamton, Lestershire and Union Railroad Company.

On March 31, 1894, the Court Street and East End Railroad Company and the West Side Street Railway Company were merged into and became owned by the Binghamton Railroad Company.

On August 22, 1892, the Binghamton Railroad Company was created by the consolidation of the Binghamton and Port Dickinson Railroad Company and the Binghamton Street Railroad Company.

The Binghamton Street Railroad Company was created on May 24, 1890, by the consolidation of the Washington Street and State Asylum Railroad Company, Park Avenue Railroad Company, the City Railway Company and the Binghamton Central Railroad Company.

The Binghamton Railroad Company, therefore, on and after 1894 had gathered to itself and consisted of seven railroad companies. By taking in the Binghamton, Lestershire and Union Railroad Company, the Bingham-

ton Railway Company was the consolidation of eight railroad lines operating within and about the city of Binghamton. In this opinion I shall speak of the Binghamton Railroad Company as the Binghamton, Lestershire and Union Railroad Company, operated outside the city, and its franchise is in no way involved in this proceeding.

The receiver, above named, has applied to the Public Service Commission for permission to increase the rate of fare on the consolidated railroad. The Special Term granted a writ of prohibition, holding that the Public Service Commission had no power to regulate fares on the railroads in the city of Binghamton. The Appellate Division has reversed the Special Term and denied the application for prohibition. The powers of the Public Service Commission in this matter depend upon the nature of the franchises granted to these seven railroad companies and the subsequent action of the city authorities in modifying or abrogating their conditions. We will take them up one by one.

The Park Avenue Railroad Company apparently has no franchise from the city, as it was built on a private right-of-way.

The Binghamton and Port Dickinson Railroad Company received its franchise by a special act of the Legislature (Chap. 501 of the Laws of 1868) and the amount of fare may, therefore, be regulated by the Legislature, or the Public Service Commission.

The franchise granted to the West Side Street Railway Company of the city of Binghamton, dated September 24, 1889, contained no condition or limitation as to fare. It contained the following provision:

" *Fifth.* Such consent is given upon the express condition that the provision of the act of the legislature of the State of New York entitled ' An Act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof, in cities,

towns and villages,' passed May 6, 1884, and the amendments thereto which may be pertinent hereto shall in good faith be complied with; also, the reasonable ordinances and requirements of the City of Binghamton."

Chapter 252 of the Laws of 1884, section 13, being the act referred to in this franchise, fixed the rate of fare at five cents for one continuous ride.

As to the franchise for this railroad, the rate of fare being fixed by an act of the Legislature could be thereafter regulated by the Legislature or the Public Service Commission.

The Court Street and East End Railroad Company resolutions or franchises, dated April 1, 1887, and May 10, 1887, granted consent to the construction and maintenance of the road "upon the express condition that the provisions of law under which the company is incorporated which are pertinent to said consent shall be complied with." No other reference is made to the rate of fare. The company was incorporated under chapter 252 of the Laws of 1884, above referred to, and as the rate of fare was limited by section 13 of that chapter, the Legislature thereafter had the power of regulation, so likewise, the Public Service Commission.

The Washington Street and State Asylum Railroad Company.— The franchise was by ordinance passed January 2, 1872, containing in section 5 thereof these words: "The company may charge and collect from any person on entering their cars or carriages, for riding any distance upon said road on the same continuous route, within the corporation limits, a sum not exceeding five cents." Section 23 of the ordinance has this: "The restrictions, requirements and regulations herein imposed upon said railroad company as the condition of this grant, shall be imposed, and required of all railroad companies using horse or mule power, which may hereafter build, establish or maintain railroads in other of the streets in the said city, and for such purpose this

resolution is declared to be ' an ordinance in relation to street railroads.' "

As this franchise was granted prior to January 1, 1875, when section 18 of article 3 of the State Constitution became effective, the regulation of fares upon the railroad was left subject to the police power of the Legislature or the Public Service Commission.

City Railway Company.— The resolution adopted by the common council of the city of Binghamton, March 17, 1884, giving to this company power to construct its road, subjected it " to an ordinance in relation to street railroads passed January 2, 1872." This is the ordinance granting the franchise to the Washington Street and State Asylum Railroad, above referred to.

In 1872 the Legislature had the reserved power to regulate the fares of street surface railroads. This ordinance or franchise was to read as though that reserved power was a part of the franchise. When, therefore, this resolution relating to the City Railway Company made applicable the ordinance in relation to street railroads passed January 2, 1872, that ordinance must be taken with its limitations existing in 1872. At that time, the franchise fixing the fare at five cents was subject to modification by the Legislature. Therefore, the City Railway Company's franchise or rate of fare was subject to the power of the Legislature, or the Public Service Commission.

In summarizing our previous decision, this court said in *People ex rel. Garrison* v. *Nixon* (229 N. Y. 575): " We think that the following classes of franchises fall outside the scope of our decisions in *Matter of Application of the City of Niagara Falls* v. *Public Service Commission of the State of New York for the Second District and the International Railway Company* (decided herewith) (229 N. Y. 333); *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244):

" 1. All franchises granted directly by the legislature.

" 2. All franchises granted by municipal authorities prior to January 1, 1875. Such franchises are subject to proper legislative regulation."

*Matter of International Ry. Co.* v. *Public Service Commission* (226 N. Y. 474) is authority for our present holding regarding the West Side Street Railway Company and the Court Street and East End Railroad Company franchises.

On the face of these franchises themselves, the rate of fare is subject to regulation by the Public Service Commission.

There is only one other franchise to consider, that of the Binghamton Central Railroad Company. Resolution of the common council was passed May 7, 1883, giving this company the right to construct and operate a horse or mule railroad through certain streets. Section 3 reads:

" Sec. 3. The cars to be used on said railroad shall be drawn by horses or mules, only at a speed not exceeding the rate of seven miles per hour, and the said company are hereby authorized and empowered to charge for and receive from each passenger carried in their cars for any distance within the City of Binghamton, a sum not exceeding five cents; and the company may run cars without any other conductor than the driver, but shall employ careful, sober and prudent agents — conductors and drivers — who shall keep a vigilant watch and lookout to avoid danger and negligence, and shall stop their cars to allow passengers to enter or leave the same."

The Appellate Division has considered the rate of fare by this section to be linked up to the horse or mule motive power. This may or may not be correct. Standing by itself, I would have doubts as to whether the mere change of motive power to electricity, that is, a mere consent to such a change, would modify the provision as to the fare. There are other reasons to sustain the conclusion of the Appellate Division which I much prefer, and to me are unanswerable.

It would be strange indeed, if upon consolidation of all these various railroads into the Binghamton Railroad Company, a small portion only of the line — that of one of the roads — should be restricted to a five-cent fare, that as to the territory served by all the other consolidated roads, the rate of fare was subject to the powers of the Public Service Commission. Whatever we may spell out piecemeal from these various franchises, the public saw and dealt with one continuous consolidated line, with its branch connections. The common council of the city, after consolidation, treated with one corporation, the Binghamton Railroad Company.

Electrification of the road, as we all know, was a radical and expensive change in motive power. It required change in equipment as well as in power; poles, wires, new rails and roadbed had to be constructed. The consent of the city to the change was more than a mere consent; it was a contract entered into on April 26, 1892, between the Binghamton and Port Dickinson Railroad Company and the Binghamton Street Railroad Company (by consolidation, the Binghamton Railroad Company). After reciting the consent of property owners to the change, the consent of the city of Binghamton was recorded upon many conditions; the size and shape of the poles to be erected were specified; the city was given the right to use the poles for the fire and police department wires and for its electric light plant. The contract also gave the right to the railroads to relay all their tracks and " to build, maintain and operate a double track   *   *   *   and to make all proper and necessary connections between its said tracks and the tracks of any other street railway in the city of Binghamton   *   *   *   upon the express condition, however, that the said company shall replace all pavements on streets torn up by it," etc. This contract further provided how much the railroad companies should pay to keep the surface of the street within the rails and for one foot

outside thereof in repair. The Binghamton Street Railroad Company was also given the right to lay additional tracks. This contract was executed by the presidents of the railroads and the mayor of the city.

In view of the consolidation and the anomalous situation arising from the mixture of franchises, it is quite evident that on entering into this formal contract regarding the maintenance and construction of electric passenger railroads in the city, the parties considered that they were fixing all obligations one toward the other in reference to such operation. If it were intended that a five-cent fare should be fixed or continued, it seems but natural that we would find some provision for it in this contract. The reason it is not there is because all the parties knew that there was no limitation for a five-cent fare on any of the roads except that which had been formerly owned by the Binghamton Central Railroad Company.

In this sense, therefore, and because of this formal contract, I think the consent to the change of motive power did modify the franchise of the Binghamton Central Railroad Company which in 1890 became part of the Binghamton Street Railroad Company.

But a better and further reason for the abrogation of this resolution of 1883, relating to the Binghamton Central Railroad Company is to be found in the consents which were subsequently given by the city to the Binghamton Railroad Company for the extension of its various lines. In December of 1895 (Exhibits 15 and 17 of the case) franchises were given to the Binghamton Railroad Company (which, as I have said, included the Binghamton Central Railroad Company) to extend, construct, operate and maintain a single track railroad along numerous streets named in the resolution or franchise of the common council. These were granted upon express conditions, one of which reads as follows: " *Second.* That the provisions of Article 4 of an act of the Legislature of the State of New York, passed June 7th, 1890, known as

the railroad law as amended by an act of the said Legislature passed April 15th, 1892, pertinent thereto, shall be complied with." Article 4, referred to (L. 1890, ch. 565, amd. L. 1892, ch. 676), includes section 101, fixing the rate of fare, which section ends with these words: " The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article."

Can it be that the Legislature has the reserved power to regulate the rate of fare for these extensions of the Binghamton Railroad Company, and has no power over other portions of the route? Is one line to be thus chopped up? Taking into consideration all these franchises, the consolidation of the various companies, the actions of the common council of the city of Binghamton, the specific references to the provisions of the Railroad Law (Cons. Laws, ch. 49), the fact stands out unaffected by theory or argument that the city of Binghamton never considered until lately (1918) that the rate of fare on the Binghamton Railroad Company was limited by contract with the city to five cents and was, therefore, beyond the power of regulation by the Public Service Commission.

That Commission has jurisdiction to determine how much the passengers shall pay to ride on the cars of the Binghamton Railway Company, and while we disagree with the Appellate Division in its reasons, we do agree with its conclusion in denying a writ of prohibition.

The order should be affirmed, with costs.

ANDREWS, LEHMAN and O'BRIEN, JJ., concur; CARDOZO, Ch. J., dissents as to franchises of Washington Street and State Asylum Railroad Company and the franchises of the Binghamton Central Railroad Company and the City Railway Company as originally granted, and in other respects concurs; POUND, J., dissents; KELLOGG, J., not sitting.

Order affirmed, etc.