In the Matter of the Application of the CITY OF YONKERS, Appellant, for an Alternative Order of Prohibition against MILO R. MALTBIE, Chairman, and Others, Individually and as Public Service Commissioners, etc., Constituting the State Division of the Department of Public Service, State of New York, and Another, Respondents.*

Third Department, January 14, 1931.

* Affg. 138 Misc. 572.

*Harry J. Laragh,* for the appellant.

*Alfred T. Davison* and *Addison B. Scoville,* for the respondent Yonkers Railroad Company.

*Charles G. Blakeslee,* for the respondent Public Service Commission.

WHITMYER, J.   The Yonkers Railroad Company applied, under section 49 of the Public Service Commission Law, for an order increasing its fares in the cities of Yonkers and Mt. Vernon. And in this proceeding the city of Yonkers is seeking an order of prohibition against the Public Service Commission, under the claim that it is without jurisdiction in the premises.

Whether or not the Commission has the necessary power is the question.

In *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244, 263) the Court of Appeals said that " The Public Service Commissions Law (§ 26, § 49, subd. 1) and the Railroad Law (§ 181) deal with maximum rates of fare established by statute, but make no reference in terms to rates established by agreement with local authorities," and concluded that, " in the absence of clear and definite language," the court " should not unnecessarily hold that the Legislature has intended to delegate any of its powers in the matter, whatever its powers may be."

Subsequently, that decision was explained and limited (*People ex rel. Village of South Glens Falls* v. *Public Service Comm.,* 225 N. Y. 216, 224; *Matter of International R. Co.* v. *Public Service*

*Comm.*, 226 id. 474, 480, 481; *People ex rel. City of New York v. Nixon*, 229 id. 356, 359, 360).

In the *Nixon Case (supra,* 360, 361) the court said, in effect, that pertinent statutes in existence, when the municipal consent to a franchise is given, are read into the contract.

Here, ten franchises are involved. And the powers of the Commission depend upon the terms and conditions thereof, as originally granted, the subsequent action of the city in respect thereto, the subsequent acts of the Legislature, and the acts thereunder of the interested parties.

Three do not contain any fare provisions; two contain fare provisions; four contain such provisions, with express conditions for compliance with article IV of the Railroad Law (Laws of 1890, chap. 565, § 101); and one contains fare provisions, with an express condition for compliance with article V (formerly article IV) of the Railroad Law (Laws of 1910, chap. 481, § 181).

The original railroad company was incorporated under chapter 252 of the Laws of 1884 by articles filed January 7, 1886.

The first franchise was for the Mt. Vernon and Nepperhan Avenue line (Exhibit 1 of the record) and was granted February 8, 1886. It was for horse cars. At that time the city had the power under its charter (Laws of 1872, chap. 866, tit. 7, § 6, subd. 14, as amd. by Laws of 1873, chap. 35) to regulate horse cars and their rates of compensation. Fare provisions were not inserted in the franchise, but section 13 of the act, under which the railroad company was organized, was in force and fixed the rate of five cents for one continuous ride from any point to any other point or connecting branch on its road within the limits of the city.

As to that franchise, then, the rate of fare, having been fixed by an act of the Legislature, could thereafter be changed by the Legislature.

The motive power on that line was changed from horse to overhead electric power on December 21, 1891.

On that date a franchise was given for an extension through Lake avenue, from Nepperhan avenue to Saw Mill River road. (Exhibit 2.) Fare provisions were not inserted in the franchise. But at that time section 101 of the Railroad Law (Laws of 1890, chap. 565, effective May 1, 1891) was in force. Section 101 provided for a five-cent fare to corporations organized under the law or under chapter 252 of the Laws of 1884, and, in addition, contained a reservation to the Legislature of the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under said chapter or under the Railroad Law.

The Railroad Law of 1890 was amended by chapter 676 of the Laws of 1892, but section 101 was not changed as regards the five-cent fare within the city limits.

And there was no change in the law, when the third franchise was granted, on August 8, 1899, without fare provisions, for the second or additional track on Yonkers avenue, from Walnut street to the Mt. Vernon line. (Exhibit 5.)

Next, we come to the franchises, with fare provisions.

They were granted August 3, 1894, and August 10, 1899, respectively.

The one of August 3, 1894, was to the North and South Electric Railway Company for Shonnard place, between certain points; Park avenue, as it was being opened; and for some other streets, to the southerly line of the city. (Exhibit 3.)

It contained the provision that the railway "will carry its passengers over all or any portion of its line, and transfer over its own routes or over those of the Yonkers Railroad Company for one fare not exceeding five cents."

The respondent corporation was formed on April 1, 1896, by a consolidation of the original company, the North and South Electric Railway Company, and the Yonkers and Tarrytown Electric Railroad Company.

Otherwise, there was no change in the situation, when the other franchise, with fare provisions, for Central Park avenue, northerly and southerly, to the city line; Nepperhan avenue to Lake avenue; the Saw Mill River road to the northerly city line; and the Tuckahoe road to the easterly city line, was granted. (Exhibit 4.)

And this franchise contained the same provision as to carriage of its passengers over all or any part of its line and as to transfers, set forth in the former one containing fare provisions. These two franchises were subject to the reserved powers of the Legislature to regulate and reduce fares.

We reach the four franchises with fare provisions and express conditions for compliance with article IV of the Railroad Law.

Article IV of the Railroad Law (Laws of 1890, chap. 565) included said section 101, fixing the rate of fare and containing the reservation to the Legislature to regulate and reduce the rate of fare, as stated.

These franchises were granted April 13, 1907, as follows: (1) For South Broadway (Exhibit 6); (2) Elm and Walnut streets and Saw Mill River road (Exhibit 7); (3) additional or second track on Yonkers avenue (Exhibit 8); and (4) Nepperhan avenue (Exhibit 9).

Each contained a provision that the company should carry its

passengers over all or any part of its line and transfer them over its own routes for one fare not exceeding five cents, and should continue to give transfers at the junction of York avenue with Jerome avenue and McLean avenue with Webster avenue, as the same were given and required under existing conditions.

And each contained an agreement on the part of the railroad company that, so long as it operated cars thereunder, any passenger therein on payment of a fare of eight cents should be entitled to a single ride over its lines and over the lines of either the elevated or subway roads in the boroughs of Manhattan or The Bronx, by transfer tickets or otherwise, through a connection to be made at stations at Bedford park, or at One Hundred and Fifty-fifth street and Eighth avenue, or at the subway station to be constructed at Kingsbridge, or at Van Cortland park, or upon Jerome avenue.

And the franchise for the additional or second track on Yonkers avenue (Exhibit 8) extended the privilege to any line of any other company thereafter controlled or leased by the respondent company.

It is clear that these four franchises modified or superseded those previously granted.

The Public Service Commission was created by chapter 429 of the Laws of 1907, effective July 1, 1907. That was after all of the franchises had been granted except the one of May 2, 1911, called the receiver's franchise.

By section 181 of the Railroad Law (Laws of 1910, chap. 481) the Legislature extended its power to regulate and reduce fares to the Public Service Commission, to be exercised as prescribed in the Public Service Commission Law.

Section 181 was derived from section 101 of the Railroad Law of 1890, without any substantial change, except the extension to the Commission of the legislative power to regulate and reduce fares.

On May 2, 1911, while the company was in the hands of a receiver, the city granted a franchise to the receiver, covering nine routes, for the construction and maintenance of branches or lines or extensions, in connection with franchises previously granted. The purpose, among other things, was to settle controversies about fares, transfers, agreements made and consents acquired.

It contained the provision that nothing therein should relieve or be deemed to relieve the company of any existing indebtedness or obligation to the city, whether contractual or otherwise, " except the provisions relative to fares and transfers," and it stated that the consent was to be understood as modifying any franchise

inconsistent with it or creating greater obligations than therein contained.

Then it provided that the fare to be charged for transportation on its cars or the cars of the Yonkers Railroad Company from or to certain points in Yonkers and other specified terminals in New York city should be five cents and contained an agreement on its part to transport passengers from any point on its lines from or to the Mt. Vernon station of the New York, New Haven and Hartford Railroad Company, in Mt. Vernon, or Waverly square in the town of Eastchester for one fare of five cents, either by the operation of through cars or by the exchange of transfers with the Westchester Electric Railway Company.

And the franchise was upon the condition that all of the pertinent provisions of article V (formerly article IV) of the Railroad Law should be complied with.

At that time section 181 (formerly 101) of the Railroad Law, above referred to, was in force.

The city claims that the amount of the stated consideration, one dollar; the reference only to the franchises stated to have been given on or about August 10, 1899, and on or about March 20, 1907; the failure to mention those stated to have been granted in 1886 and 1894, which were perpetual, while the receiver's franchise was for a limited term, indicate that there is no connection between the earlier franchises and the receiver's franchise.

But it will be noted that only one franchise was granted in 1886, and one in 1894, and that both were subject to the power of the Legislature to regulate and reduce. Further, the obligations of the company as to fares and transfers and in other respects, which need not be specified, were greatly increased.

Thus, it is clear that this last franchise was intended to and that it did modify and supersede all of those which preceded. (*Public Service Commission* v. *Westchester Street R. R. Co.*, 206 N. Y. 209, 220; *People ex rel. City of New York* v. *Nixon, supra.*)

It was granted under the power reserved to the Legislature, which had been delegated to the Public Service Commission. (*Matter of Evens* v. *Public Service Comm.*, 246 N. Y. 224, 232, 233.)

On April 7, 1919, the city, by ordinance, duly permitted the company to change to the zoning system for two years.

By chapter 134 of the Laws of 1921, effective March 30, 1921, amending subdivision 1 of section 49 of the Public Service Commission Law, the Legislature granted to the Commission the power to increase fares, notwithstanding that a higher or lower rate, fare or charge had theretofore been prescribed by general or special

statute, contract, grant, franchise, condition, consent or other agreement.

On April 7, 1921, the Commission made an order that it was unreasonable to require the company to transfer passengers between points in different municipalities for a single fare of five cents, and authorized and empowered the company to collect on the basis of the zoning system.

And by chapter 891 of the Laws of 1923, amending subdivision 1 of section 49 of the Public Service Commission Law, the power of the Commission as to rates prescribed by contract, grant, franchise, condition, consent or other agreement was taken out of the statute.

Thus, the rates of fare sought to be raised are not the original rates fixed by the city, but are those fixed by the Commission in 1921. (*Matter of United Traction Co.* v. *Public Service Comm.*, 219 App. Div. 95, 107.)

The order should be affirmed.

All concur.

Order affirmed, with ten dollars costs and disbursements.