LEMOYNE ARMS, INC., Plaintiff, *v.* CENTRAL NEW YORK POWER CORPORATION, Defendant.

Supreme Court, Special Term, Onondaga County, January 31, 1948.

*Sherman C. Ward* and *Joseph J. Doran* for Public Service Commission of State of New York, intervener, defendant.

*H. Duane Bruce* for plaintiff.

*Myron Melvin* and *James Skahen* for defendant.

*Lyle W. Hornbeck, Corporation Counsel (George T. Driscoll* of counsel), for City of Syracuse, *amicus curiæ.*

SEARL, J. The motion, by order to show cause, returnable January 22d, is made by Public Service Commission, intervener, for judgment and dismissal of the complaint (Rules Civ. Prac., rule 107, subd. 2) : " That the court has not jurisdiction of the subject of the action."

The amended complaint alleges in part that defendant is sole supplier to the public of Syracuse of electricity and gas for light, heat, and power; plaintiff, or its predecessor, in January, 1947, arranged for construction of several apartment houses' to be heated by gas, and in February, 1947, advised defendant of intention to construct the buildings with separate gas heating equipment for each of the forty-two apartments as the only means of heating, together with gas stoves and gas water heaters; that in October, 1947, plaintiff notified defendant that such gas heating systems had been installed in several of the apartments and would shortly be installed in the remainder; " that thereupon defendant laid pipes connecting from its gas mains in the adjacent streets into the basement of each of such apartments for servicing gas to such heating systems and to stoves and hot water heaters. That work was completed about November 15, 1947. For furnishing the pipe and labor required in making such connections, defendant charged $2,537 which has been paid ", and that between November 15 and December 15, 1947, defendant installed meters in twenty apartments.

The complaint then alleges that on or about December 15th four apartments were and still are occupied, in several instances by families with one or more small children; also, that eight apartments had been rented for occupancy January 1, 1948, and that in one instance an eviction order had been withheld with assurance that the family would move to the apartments under consideration by January 1st. The allegations are likewise made that all forty-two apartments are substantially completed except painting and decorating, and that the number of applicants greatly exceed the number of apartments available. It is also claimed that the cost of apartments and land " will be around $400,000 "; that a part of the cost has been financed

through a mortgage insured by the Federal Housing Administration, the plans filed with such agency showing the apartments to be gas heated.

The complaint then alleges that on December 10, 1947, " defendant notified plaintiff to the effect that defendant will discontinue all gas service to such apartments unless the gas heating units therein are discontinued ". Such notice, attached to the complaint states that the effective date of such discontinuance of all gas service will be ten days after service of the notice, as the defendant had been informed that gas heating units had been installed " in violation of the restrictive regulations effective March 24, 1947, by order of the Public Service Commission of the State of New York ".

The next allegation in the complaint is to the effect that defendant is, under the circumstances detailed, obligated by law to furnish gas, and the consummation of such threat is illegal and in violation of statute; that plaintiff has never been notified of any proceeding before any judicial body or governmental agency and has never been represented or given opportunity to be heard, nor ever been served with a copy of such a determination, and that such a determination is invalid and unconstitutional as depriving plaintiff of property and rights without due process of law.

Thereafter, plaintiff alleges that should such threat be carried out, it will suffer irreparable damage, as not only will heat be necessary to complete the decorating of the apartments, but that gas is the only fuel which can be used in the heating system now installed, that conversion to any other type of heating would require at least three months time, accompanied with heavy expense, to say nothing of the suffering to be entailed to present occupants.

A further allegation is made that a franchise was granted in 1897 by the city of Syracuse to the predecessor of defendant " to lay pipes and mains in and through the streets ", which include the three highways surrounding plaintiff's property, conditionally, upon furnishing gas for cooking, hot water and space heating.

Before we approach the main issue, as to whether the complaint must be dismissed, the court should properly state the present status of the litigation. Upon the return of an order to show cause on December 29th, as to why a temporary restraining order should not issue to prevent turning off all heat in the occupied apartments, the court issued such an order as to certain apartments then occupied and as to a few others on

which finishing touches were being applied. Defendant did not object to the application of humanitarian principles, the outside temperature being then close to zero. All interested parties cooperated in bringing the action to speedy issue. The same was referred to an official referee to hear, try, and determine, reserving to the intervener, Public Service Commission, the right to move on an application to dismiss the complaint as soon as plaintiff served an amended complaint. Later, by order, proof as to whether the temporary restraining order should be continued was referred to the same official referee to hear and report. The referee promptly took proof for three days and is now awaiting the filing of briefs. Should the court grant the motion for dismissal, any further work on the part of the referee would become academic. Counsel have asked, in order to expedite a determination of this matter, that the court render a decision without the submission of briefs.

In seeking to determine whether the court or the Public Service Commission has sole jurisdiction, we may properly discuss:

(1st) Assuming that the Legislature delegated sole authority to the Public Service Commission to act on the questions now arising between plaintiff and defendant, has the Legislature power to deprive the city of Syracuse and its citizens of the benefits of a contract and franchise by the terms of which defendant is permitted to use the streets of the city of Syracuse for the operation of its gas pipe lines and, in turn, serve the citizens of Syracuse as provided in the franchise?

(2d) Is there legal or statutory authority conferring sole jurisdiction in the Public Service Commission?

(3d) Is there a question of law presented in the complaint that requires judicial determination?

Approaching the first question, that of franchise, we find that in granting the use of the streets and highways of Syracuse to Syracuse Heat and Power Company, its successors and assigns, the city granted in 1888 and as amended December 20, 1897, the right and privilege " to lay pipes and mains in and through the streets, highways * * * for the purpose of transmitting and conducting steam, hot water, hot air, and gas, either natural or manufactured, to public and private buildings for light, heat, domestic and mechanical purposes * * * and to make all necessary excavations in said streets * * * for the purpose of laying said pipes and mains and of making all necessary repairs and alterations therein as may be required; that such **permission** and consent be granted only and always **subject to**

each and all of the following conditions, namely * * * Fifteenth: In consideration of the privileges herein granted such corporation shall furnish to any person desiring the same in the City of Syracuse, on all of the several streets, lanes, alleys, avenues, public squares or other places in which its mains or pipes shall at any time be laid and in use, gas for heating or lighting, or both * * *.''

Probably the most frequently cited authority on this branch of our subject is *Matter of Quinby* v. *Public Service Comm.* (223 N. Y. 244). The opinion of Judge Pound considers the argument (p. 260, 262) as to whether a municipal corporation " ' is simply a political subdivision of the State, and exists by virtue of the exercise of the power of the State through its legislative department ' "; whether " ' The city is the creature of the State ' ", whether consent having been given by a municipality the same is " subject to alteration or repeal at the legislative will ", whether " our municipalities are *pro tanto* independent of legislative control ", whether " The grant by the municipality of authority to use the streets is not a mere privilege or gratuity ", whether " Once accepted, it becomes a contract which neither the state nor its agencies can impair ", citing *People* v. *O'Brien* (111 N. Y. 1). (See, also, *People ex rel. Vil. of S. Glens Falls* v. *Public Service Comm.*, 225 N. Y. 216; *Matter of International Ry. Co.* v. *Public Service Comm.*, 226 N. Y. 474; *Matter of Evens* v. *Public Service Comm.*, 246 N. Y. 224; *Matter of Dry Dock, E. B. & B. R. R. Co.*, 254 N. Y. 305; *City of New York* v. *Interborough R. T. Co.*, 257 N. Y. 20.)

Our Court of Appeals has recently set forth its concept resulting from the cases we have referred to. Judge Hubbs writes for the court in an opinion in which all members of the court join, namely, *City of New York* v. *Maltbie* (274 N. Y. 90). The question there as here was one of jurisdiction. As there stated (p. 98), " Jurisdiction of the Public Service Commission cannot be inferred by implication, but must be given by language which admits of no other reasonable construction ", citing *Siler* v. *Louisville & Nashville R. R. Co.* (213 U. S. 175).

Practically all the authorities cited above relate to rates, their increase or reduction. The commission is peculiarly equipped to deal with rates. If the courts are in doubt as to the power of the commission to attempt to regulate rates, by the same token it would logically appear that the commission is not clothed with power to impair much more important rights guaranteed by the franchise, namely, the right to participate

with other citizens in obtaining a supply of gas, provided there is an available supply.

This question of invasion of contract or franchise rights has been before our court of last resort on many occasions as evidenced by the decisions referred to. After so many splendid judicial minds have differed, this court will not attempt to be the mentor to decide this much mooted question. Suffice it to say that it presents here a law question that should be decided by the judiciary, in this case the learned referee. The Public Service Commission has no authority to pass on a question of law.

We now approach the second question, namely: " Is there legal or statutory authority conferring sole jurisdiction on the Public Service Commission? "

If the commission has any jurisdiction superior to that of our court it must be found, if at all, in section 66 of Public Service Law, relating to " General powers of commission in respect to gas and electricity." The provisions of the section are too lengthy to quote. With one or two exceptions the same provisions were contained in the section prior to its amendment in 1920 as now exist. The extent of the powers of the commission and the scope of section 66 were fixed by judicial action prior to the amendment. Such decisions are directly in point as affecting the instant case. Unless the amendment, presently to be considered, changes the situation presented today, the decisions must be deemed now applicable. In January, 1918, then Justice Sears, since for many years a member of the Appellate Division and later of the Court of Appeals, rendered a decision in Special Term, namely *Matter of Park Abbott Realty Co.* v. *Iroquois Nat. G. Co.* (102 Misc. 266). The Iroquois Natural Gas Company was engaged in the distribution of natural gas to customers in the city of Buffalo under a franchise from the city to a predecessor company which contained the following provision: " The company will furnish natural gas to all consumers on the line of the streets * * * in which the pipes are laid as long as said pipes shall be in use for the purpose of supplying natural gas." In October, 1916, relator, about to construct a dwelling applied for a gas connection. In December, 1917, upon complaint of another the Public Service Commission made an order in effect that the gas company should neither connect nor serve gas to one who at the time of receipt of the order was not a customer or user of gas. The order contained a further provision that " * * * any person, firm or corporation affected by the provisions of this

order may apply to this commission to have this order or any part thereof modified or annulled ''. The applicant had constructed this dwelling with appliances for use of natural gas. There was a shortage of coal for space heating. The gas company, during extremely cold weather, had been unable to completely serve all present customers due to lack of supply of gas, and customers in the neighborhood suffered to some extent accordingly. Justice SEARS wrote in reaching a conclusion (pp. 270–271) : '' The respondent is engaged in a business of a public character and its obligation to serve all equally within its power and to make connections, in the absence of any restraining order, rests upon a common law duty, on the contract obligation of its franchise and on the statutory duty imposed by section 65 of the Public Service Commissions Law. Of course, the law does not require the impossible and if gas cannot be obtained a company like the respondent is excused from supplying it. The public service commission has undoubted right to make regulations for the supply of gas but a restriction or classification which is unreasonable and arbitrary is invalid, and may be attacked collaterally. *Fire Department* v. *Gilmour,* 149 N. Y. 453; *People* v. *Kaye,* 212 id. 415.''

This decision was affirmed (187 App. Div. 922) with the following memorandum: '' Held, that since the gas company refused to furnish the relator with gas solely by reason of the order of the Public Service Commission of the Second District, made December 13, 1917, our decision is based on the lack of legislative authority, express or implied, for that part of the order of the Public Service Commission involved. All concurred.''

In December, 1919, the Fourth Department by a decision wherein Presiding Justice KRUSE wrote the opinion in *Public Service Comm.* v. *Iroquois Nat. Gas Co.* (189 App. Div. 545) held substantially to the same effect as in the last-cited case. The gas company contended that its supply was inadequate to furnish those already connected during the winter months. As the decision was unanimously affirmed without opinion (229 N. Y. 592), it is not out of order to quote the salient opinion of Justice KRUSE in the Appellate Division (p. 547) : '' We are still of the opinion that the Public Service Commission has no power to make an order discriminating in favor of those who now have gas connections and against those who have not, but need gas, nor has the gas company itself the right to make such discrimination. Gas corporations, electrical corporations and even municipalities themselves are forbidden to give any undue or unreasonable

preference or advantage to any person or locality, or to any particular description of service, or subject any one, or any particular description of service to any undue or unreasonable prejudice or disadvantage. (Public Service Commission Law, § 65, subd. 3.) ''

Near the end of his opinion Justice KRUSE remarked that the Public Service Commission might have power to limit the supply of gas, or give preference to customers ''for domestic purposes over that for industrial purposes ''.

It is significant that the next year the Legislature amended section 66 of the Public Service Law by chapter 540 of the Laws of 1920. The amendment permitted the curtailment of natural gas for manufacturing or industrial purposes for a period not to exceed four months, as may have been prompted by the opinion of Justice KRUSE. Otherwise, so far as the authority of the commission is concerned as affecting the instant case, the section remained unaltered as prior to the two last-cited decisions in 1919. Nor has the section been since amended in that respect. The decisions are, therefore, applicable today.

The court must, however, refer to a citation called to its attention by counsel for Public Service Commission during argument of the instant motion, namely, *People ex rel. Pennsylvania G. Co.* v. *Public Service. Comm.* (196 App. Div. 514). The decision held that the gas company, a foreign corporation, would not be compelled to furnish gas to additional consumers where the company had not been authorized to do business in New York State. The gas company was not compelled to service further customers as the supply was limited. The decision of the Public Service Commission was, however, arrived at after a hearing at which the parties had an opportunity to be heard, which is not the situation in the instant case. As stated in the opinion (p. 517) '' * * * the evidence shows physical incapability to comply with the order and probable disaster if compliance should be attempted. Courts will not try to enforce the impossible.''

Moreover, in the last above-cited case it appeared that the gas company (p. 516) '' was under no contractual liability, by franchise or otherwise, to make the connections sought ''. Such is not the case here.

We now approach the third or concluding problem, namely: '' Is there a question of law presented in the complaint that requires judicial determination? '' Having already covered the legal question relating to franchise, it is proper to say that the commission contends an action for injunction or declaratory

judgment does not lie in a situation such as this, and that the only relief that can be sought from the courts is by way of certiorari or mandamus after the commission has made an order. Even assuming that the commission here had jurisdiction, it is definite that the commission has no authority to determine questions of law. (*Kovarsky* v. *Brooklyn Union Gas* Co., 253 App. Div. 635, affd. 279 N. Y. 304.)

We are here faced with a claim that neither the plaintiff nor the city, nor any interested party was served or given notice that would permit one to be heard in opposition. A notice was served, however, on or about December 10, 1947, that within ten days all gas service, which would necessarily mean for cooking, for hot water purposes, and for space heating, would be discontinued unless the gas heating unit was disconnected. A question as to whether such action was unreasonable or arbitrary, involving as it did the rights of innocent occupants, actual or contemplated, presents a question of law. This is true especially in view of the general knowledge of the housing emergency later to be referred to.

A recent authority which closely approximates the precise question now involved is *Kovarsky* v. *Brooklyn Union Gas Co.* (279 N. Y. 304, *supra*), heretofore referred to on another point. We will assume for the moment, giving to the commission the most favorable interpretation on the points we have already discussed, that the commission had authority to make rules in the instant case. Under the authorities, if the commission had power to make rules and regulations, it likewise had power to pass upon the reasonableness of such rules. This power might seem extravagant to some, still that is the law, for the problems of the commission are intricate and complicated. However, when it comes to the question of whether a rule is unreasonably applied, then resort may be had to the courts. Judge Hubbs, in the cited case, refers and approves of the decision in *Pennsylvania R. R. Co.* v. *Puritan Coal Mining Co.* (237 U. S. 121, 131), where the company had brought an action at law against the Interstate Commerce Commission, in most respects having similar powers as the Public Service Commission of New York. " It admitted the reasonableness of the rule but attacked the discriminatory manner in which defendant had applied it to the plaintiff." Judge Hubbs remarked (p. 313): " That was a question of law and it was not necessary to have the Commission pass upon it first."

Again, the same court cites with approval the language found in *Murray* v. *New York Telephone Co.* (170 App. Div. 17, 25,

affd. 226 N. Y. 590), to the effect that " * * * when the attack is made upon the manner of the application of the tariff, as where it is charged that it is applied in a discriminatory manner, then the matter is for the courts to adjudicate rather than the Commission." (Also, see *Matter of Leitner* v. *New York Telephone Co.*, 277 N. Y. 180, 189; *Pennsylvania R. R. Co.* v. *International Coal Co.*, 230 U. S. 184; *Great No. Ry.* v. *Merchants Elev. Co.*, 259 U. S. 285, 293.)

Counsel for the commission, during argument, referred to *Croydon Syndicate* v. *Consolidated Edison Co.* (72 N. Y. S. 2d 846). That was a rate case. There the court pointed out (p. 849) that " The rule is different where only a question of law is involved ", citing several of the cases herein referred to.

The duties of the commission are administrative, those of the courts, judicial. There is ample authority that matters of rates involve and call for action on the part of a body of men such as our capable Interstate Commerce Commission, trained in research into and technical knowledge of the intricacies of public service rates. When a question of law is involved, or where the application of their rules come in question, our courts are the proper tribunals for our people to seek relief, providing relief is justified.

The instant action is illustrative of such a conclusion. Probably no other domestic problem is more disturbing today than housing. An emergency exists that taxes national, State and municipal administrations.

Attorneys and officers of the defendant have been co-operative and have shown a disposition of aid so far as conditions would permit. The decision which this court is about to render permits the referee to determine the merits of the controversy. This court only determines that questions exist that permit the parties to be heard, and continues the temporary injunction to prevent unnecessary harm or suffering. Surely the amount of gas necessary to keep a moderate degree of heat in the occupied apartments is not likely to break down the entire means of supply to others. However, this interim respite during the present emergency must not be accepted by prospective builders as an open sesame to demand gas heat. The defendant cannot be expected to perform the impossible.

Corporation counsel for the city has appeared as *amicus curiæ* and urged that in this case the ends of justice would be promoted by permitting the apartments to be occupied, due to the pressing emergency and the severity of the winter.

An order may issue denying the motion of Public Service Commission, intervener, for judgment and dismissal of the amended complaint. The temporary injunction may be continued until further order of the court to the extent as heretofore indicated in court, with the rights granted to any of the parties for a modification thereof.