FRANCES CARDONE, Plaintiff, *v.* CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.

Municipal Court of the City of New York, Borough of The Bronx, June 21, 1949.

*Harry Lesser* for plaintiff.

*Colley E. Williams* and *Sidney L. Davis* for defendant.

QUINN, J. The plaintiff, as a consumer of the defendant, purchased from the defendant and the defendant sold to the plaintiff a measured quantity of gas delivered between the dates December 23, 1948, and January 27, 1949, at 4190 Bronxwood Avenue, The Bronx, New York City. By means of meter readings taken on each of the dates mentioned the quantity of gas delivered was determined to be 77,600 cubic feet. About midway in the period of delivery, that is, on January 9, 1949, the defendant increased the unit price or rate for the gas delivered to plaintiff. Plaintiff paid the defendant for the gas, according to the demand of the defendant, which included a quantity of gas delivered between January 9, 1949, and January 27, 1949, at the increased price. However, the number of units of gas delivered to plaintiff between January 9, 1949, and January 27, 1949, for which defendant charged an increased unit price was not a measured quantity. It was a quantity only estimated by the defendant to have been delivered. This estimate was made arbitrarily, i.e., without reference to any fixed rule or standard.

Plaintiff now seeks to recover the excess in price exacted of her by the defendant, resulting from the increment charged on the indeterminate quantity of gas which defendant merely speculates it delivered between January 9, 1949, and January 27, 1949, amounting to $10.21.

Rejecting such surplus characterizations and conclusory statements of fact or law as the complaint may contain, yet indulging the pleader in every reasonable inference which her words may fairly import, the foregoing is a brief, unstilted paraphrase of the allegations upon which plaintiff relies.

These are the barebones of ultimate facts exposed by defendant's motion to dismiss the complaint under subdivision 5 of rule 106 of the Rules of Civil Practice. Examining them in the light of the statutory injunction laid upon this court that " The allegations of a pleading must be liberally construed for the purpose of doing substantial justice between the parties " (N. Y. City Mun. Ct. Code, § 93; L. 1915, ch. 279), the question is: Do they constitute the framework of a recognized cause of action?

The fact that the plaintiff is a " consumer of gas of the defendant " and that the defendant is a " gas corporation " within the definition of the Public Service Law does not obscure

the relationship between the parties as essentially that of buyer and seller; nor that the transaction between them was the familiar one of a sale of goods. Were the commodity dealt in grapes or grain, instead of gas, and the buyer alleged the delivery of the goods by the seller, the payment of the price by the buyer, based on the measured quantity or number of items delivered, the ignorance, misapprehension or mistake of the parties as to the exact quantity or number of goods delivered, an overcharge resulting from the ignorance, misapprehension or mistake in quantity, then clearly the elements of an action by the buyer for a recovery of the amount of the overage in price would be sufficiently stated.

"It is an elementary principle of law, as well as of the plainest equity, that where money is erroneously paid by one person to another, in consequence of a mutual ignorance as to facts, which, if known, would have prevented the payment, the money so paid may be recovered back. (*Burr* v. *Veeder,* 3 Wend., 412.) An error of fact takes place, either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist. (*Mowatt* v. *Wright,* 1 id., 355, 360.) * * * This principle applies to every form of contract, express or implied, including an account stated * * *." (*Calkins* v. *Griswold,* 11 Hun 208, 210; see *Roberts* v. *Ellwood,* 116 N. Y. 651, 653.)

There is no essential distinction to be made here between the gas, in which the parties to this suit dealt, and any other merchandise such as more commonly is the subject of an action of this character.

The amount charged by the defendant, on a quantative computation, and paid by the plaintiff constitutes an implied representation that the price was based on known factors. It is alleged by the plaintiff that this representation was untrue. It is "immaterial, whether the representation be willfully and designedly false, or ignorantly and negligently untrue." (*Doggett* v. *Emerson,* 3 Story 700, 734.)

The defendant does not know the amount of gas delivered between January 9, 1949, and January 27, 1949, for which it charged an increase in rate over the unit price theretofore applicable. The plaintiff does not know the quantity of gas consumed between those dates for which she paid at the increased unit price. As to this very important factor of quantity there is mutual ignorance. The use of this unknown, indeterminate factor in arriving at the price paid by plaintiff creates that

element of mistake from which the law is wont to afford relief in money damages to one who thereby has been prejudiced. A cause of action sounding in this category is sufficiently alleged in the instant complaint.

Further objection is made by the defendant under subdivision 2 of rule 107 of the Rules of Civil Practice that this court does not have jurisdiction of · the subject matter of this action. For the purposes of this latter phase of defendant's motion, only, the affidavits and exhibits of the parties have been considered.

The defendant is a " gas corporation " subject to the provisions of the Public Service Law and the regulatory powers therein conferred upon the Public Service Commission.

The price which defendant may charge for its gas is not a matter of private bargaining between defendant and each of its consumers. Because of the inherently monopolistic nature of defendant's business in selling gas to large segments of the public, the reasonableness and fairness of the price and terms at which it sells are subject to review and control by the Public Service Commission. These terms of sale, including the price, become fixed and binding on the consumer when the defendant files the same which are known as " schedules " with the Public Service Commission and the Public Service Commission by official order approves them. By statutory definition the " schedules " embrace " all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such gas corporation " (Public Service Law, § 66, subd. 12).

Among the terms of sale under which the plaintiff bought gas from the defendant on December 23, 1948, was the provision that the gas would be measured through meters belonging to the defendant and installed at the point of consumption.

The circumstances under which the metering of gas to the plaintiff might be dispensed with are expressly provided in the schedules on file with the approval of the Public Service Commission. But even in these special circumstances, none of which are present in this case, an estimate of the consumption of gas without reference to any meter or measuring device is permitted only " *when there is no change in the rates during the billing period* ".

In December, 1948, the defendant made application to the Public Service Commission seeking an increase in the price of

gas and a change in the existing terms of sale. After a preliminary hearing the defendant was directed to file additional leaves amending its schedules as to price and terms of sale. The Public Service Commission thereafter approved, for a limited period, the additional leaves filed by the defendant and by official order made the increase in rates, and other changes thereby wrought, effective as of January 10, 1949.

Nowhere in this amended schedule, fixing the new unit price and terms of sale under which gas was to be delivered to the plaintiff, does the defendant expressly assert or reserve the right to *estimate* the quantity of gas delivered between meter readings; nor does it expressly assert or reserve the right to prorate the charge to the plaintiff on the basis of the change in rates occuring in the course of the billing period between meter readings.

The defendant could not " charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time ". (Public Service Law, § 66, subd. 12.)

The terms of sale applicable to the billing of changes in rates in effect before, on, and after January 10, 1949, as approved by the Public Service Commission, recites that " the rates, charges and classifications of service set forth in this Rate Schedule or in amendments thereof by revised leaves hereafter duly filed and in effect shall, *unless otherwise expressly stated therein,* apply to service supplied to the customer commencing with *the first schedule meter reading date on or after the effective date set forth in such Rate Schedule* or revised leaves. *thereof* ". (Rule III 7 [h] of defendant's rate schedule; emphasis added.)

The statement in defendant's revised leaves, amending its schedule, effective January 10, 1949, that " The foregoing rates * * * shall apply to all gas service supplied on and after the effective date hereof * * * " is relied upon by defendant as *expressly* varying the provisions of rule III 7 (h) (*supra*) of its pre-existing schedule that " The rates * * * shall * * * apply to service supplied * * * *commencing with the first meter reading date* on and after the effective date set forth ".

The former does not *expressly,* i.e., directly and distinctly, state a variation of the latter. On the contrary the variation, at best, is merely *tacit.* The only significant difference between

them is the omission from the former of the phrase *"commencing with the first meter reading date"*. By its silence on the "commencing date" of the increase in rates, the defendant cannot be said to have "otherwise expressly" restated the existing provision of its schedule on the subject, as embodied in rule III 7 (h) of which it is the author. Nor can the use of the word *"expressly"* be ignored, or excused as loose, idle verbiage. This is in accordance with the well-known rule of law that an instrument fixing the terms of a contractual relationship (as defendant's schedule does here) shall be most strictly construed against its draughtsman.

Clearly then under the existing terms of sale in effect during the whole period during which gas was delivered by the defendant to the plaintiff between the meter-reading dates of December 23, 1948, and January 27, 1949, the defendant was entitled to charge and the plaintiff was required to pay a price, without increase in rate, based on the measured quantity of gas delivered between those dates as determined by the meter readings taken on each of these dates.

It is established beyond dispute that the measured quantity of gas thus delivered amounts to 77,600 cubic feet. Whether the whole of that quantity was delivered before January 10, 1949, or after that date; or precisely how much of that quantity was delivered before January 9th and how much thereafter, is a matter of speculation. The quantity delivered between December 23, 1948, and January 9, 1949, and the quantity delivered between January 9, 1949, and January 27, 1949, are unmeasured and unknown to either the buyer or the seller.

Defendant's right to guess as to these quantities, no matter on what canny suppositions, formulae, or other shrewd methods of calculation that guess might be based, is unwarranted by the schedules of the defendant, which comprise the terms of sale.

Under these circumstances the price charged by the defendant based on the application of an increase in rates, occurring between meter readings, to an unknown quantity of gas estimated to have been delivered during part of that period, constitutes an overcharge.

Had the plaintiff refused the demand of the defendant for the full price and had the defendant brought an action at law to collect its charge for this gas, the plaintiff as a *complete* defense to any such cause of action could have asserted that the "price * * * demanded [was] in excess of that fixed by the commission". (Public Service Law, § 75.) The "price * * * fixed by the commission", within the meaning of the

statute, cannot be anything other than the rate applied to metered quantities as stated in the filed schedules of the defendant and approved by the Public Service Commission.

To say that although the plaintiff under the statute, pleading the overcharge by way of defense, could wholly defeat the defendant's right to payment for the gas delivered between December 23, 1948, and January 27, 1949, in an action at law; and yet to say that where the plaintiff has paid the excessive price through ignorance or mistake, she cannot maintain an action at law to recover the amount of the overcharge, would be to assert an anomaly repugnant to the spirit of the statute and the obvious intention of the Legislature.

Good order requires that the plaintiff is to be afforded whatever lawful remedy lies easiest and quickest to hand. This court is peculiarly constituted thus to accommodate the plaintiff in her effort to recover the small sum of money here involved.

The unbroken legal-historical tradition which finds present day expression in the Municipal Court of the City of New York, derives from the Court of Arbitrators instituted in 1647 in the Dutch Colonial Settlement of New Amsterdam. The ordinance creating that court and establishing the tradition in which its successors have functioned, gives, as the purpose and reason for its creation, the need of relieving higher tribunals, even in that early day, of " Lawsuits and disputes . * * * and also divers questions and quarrels of trivial moment, which can be * * * disposed of by Arbitrators, but, in consequence of matters, of greater importance, frequently remain over and undecided, to the prejudice and injury of this place and the good people thereof, and also to the great expense, loss of time and vexation of the contending parties." (Lauer's Municipal Court Practice and Forms [2d ed.], p. 5.)

It is the contention of the defendant that the plaintiff should be relegated to such rights to relief as the Public Service Commission, within its powers, on proper petition, might see fit to afford her. Then on the determination of the Public Service Commission the plaintiff, as petitioner or respondent, in a proceeding in the Supreme Court of the State of New York under article 78 of the Civil Practice Act, could finally obtain a judicial determination of the rights of the parties to this controversy. To adopt such a course would be a great mischief indeed and surely " to the prejudice and injury of this place and the good people thereof, and also to the great expense, loss of time and vexation of the contending parties ", if on any ground this court has jurisdiction of the dispute. Whether

or not it has depends solely upon the extent to which it is ousted of jurisdiction, on the issue here presented, by the superior, exclusive powers expressly conferred upon the Public Service Commission by statute.

The Public Service Commission has wide regulatory and inquisitorial powers in the field of public utilities. Unquestionably, these powers were conferred by the Legislature, not by way of cutting down the rights and remedies which an individual might have at law in its contractual relations with a public utility corporation, but rather by way of enlarging the protection of the public and the individual consumer against unjust and unreasonable rates and charges and discriminatory rules which might favor or prejudice one consumer or group of consumers as against any other group or segment of the consuming public.

Were the plaintiff here to attack the rates or charges of the defendant as unreasonable or unjust, or were she to complain that the defendant had adopted or was attempting to adopt rates or rules which by their terms tend to discriminate against her in contrast to its treatment of other consumers in the same or similar approved classifications, it is well settled that the Public Service Commission would have primary exclusive jurisdiction to entertain, investigate, try and determine a petition based on any or all such grounds. (*Matter of Leitner* v. *New York Tel. Co.*, 277 N. Y. 180; *Murray* v. *New York Tel. Co.*, 170 App. Div. 17, affd. 226 N. Y. 590; *Croydon Syndicate* v. *Consolidated Edison Co. of N. Y.*, 72 N. Y. S. 2d 846.)

It may be said, however, at least for the purpose of this action, that the plaintiff concedes the reasonableness, and nondiscriminatory character of the schedules of the defendant which the Public Service Commission approved. Her complaint is addressed to the question of whether or not the defendant, charging her for gas at a just and reasonable though increased rate, under nondiscriminatory terms of sale, so misapplied, through misinterpretation, its applicable rule, or so mistakenly applied a nonexistent rule, as to violate the terms of sale and charge her an excessive price based on the merely estimated delivery of actually unknown quantities of gas.

Was the defendant justified under the terms of sale, which here are to be gathered from the schedules on file and approved by the Public Service Commission, in assuming, speculating or estimating the factor of quantity which enters inextricably into the price? The answer to that question requires a construction of the fixed terms of sale. The construction of the

terms of any contractual relationship, in sales or otherwise, is a peculiarly judicial function and a question of law for the courts. There is no provision of the Public Service Law to the contrary, once the terms of sale become fixed. Neither is there any express, or necessarily implied, grant of power to the Public Service Commission to exercise the judicial function in this respect. Moreover, the Public Service Commission, for all its puissance, has not the power to award the money judgment which plaintiff here seeks. This cause going to " ' the manner of the application ' " of defendant's increased rate " ' is for the courts to adjudicate rather than the Commission ' ". (*Kovarsky* v. *Brooklyn Union Gas Co.*, 279 N. Y. 304, 312; *Hewitt* v. *New York, New Haven & Hartford R. R. Co.*, 284 N. Y. 117; *Lemoyne Arms, Inc.*, v. *Central New York Power Corp.*, 191 Misc. 709, 717).

Finally, it is to be noted that at the time the defendant filed its new leaves with the Public Service Commission amending its rate schedule, it notified the Public Service Commission, by covering letter, of its intention to prorate, at the increased rate, unmeasured estimated quantities of gas consumed between January 9, 1949, and the next scheduled meter reading. The Public Service Commission reviewed this proposal of the defendant and, on the report of its examiners, did not entirely approve of the method of proration proposed by the defendant. This proposal is now pending further review by the Public Service Commission.

It is urged by the defendant that because of the proposal contained in its letter, it is justified in the amount charged the plaintiff for gas during the period here in dispute. This proposal of the defendant with respect to prorating, though contained in a letter to the Public Service Commission is not included in the schedules as filed and approved by the commission. It never became a part of the terms of sale under which the plaintiff bought and the defendant sold gas between December 23, 1948, and January 27, 1949.

Any opinion the Public Service Commission might render, approving or disapproving the method or formula which the defendant proposed to use in prorating its charges, well might be advisory, only, and based necessarily on the assumption (leaving the question of legal construction to the courts) that the defendant under its terms of sale had a right to estimate the quantities of gas consumed between the effective date of the new rate and the next scheduled meter reading.

Construing the fixed terms of relationship between the parties to this suit, for the sale of gas delivered between December 23, 1948, and January 27, 1949, it is affirmatively established, by the very affidavits and exhibits submitted by the defendant, that the terms of sale in effect during that period gave no right to the defendant to charge a price based upon the application of an increased rate to estimated quantities of gas. The extent by which the increased price charged exceeds the charge applicable to the known quantity of gas is the extent to which this plaintiff is entitled to recover. That excess, according to the uncontroverted claim of the plaintiff, is the sum of $10.21.

The motions of the defendant under the Rules of Civil Practice for judgment on the complaint, on the grounds specified in subdivision 5 of rule 106, and for judgment on the complaint and affidavit, on the grounds specified in subdivision 2 of rule 107, are denied.

It appearing from the affidavits submitted on the motion for judgment on the complaint and affidavit, under subdivision 2 of rule 107 of the Rules of Civil Practice, that no issue of fact remains to be disposed of, on the application of the plaintiff for judgment pursuant to rules 195 and 196 of the Rules of Civil Practice, judgment is granted for the plaintiff.