**TEXAS & N. O. R. CO. v. HOUSTON BELT & TERMINAL RY. CO.**

No. 12164.

Court of Civil Appeals of Texas. Galveston.

Feb. 9, 1950.

Rehearing Denied March 9, 1950.

J. C. Hutcheson, III, and Ben White, of Houston, attorneys; Baker, Botts, Andrews & Parish, of Houston, of Counsel, for appellant.

R. H. Kelley and C. O. Ryan, of Houston, attorneys; Kelley, Mosheim & Ryan, of Houston, of Counsel, for appellee.

CODY, Justice.

This is an appeal by plaintiff, a line-haul railroad company, which has terminal facilities in Houston and vicinity, from the court's refusal to grant a temporary and permanent injunction against defendant, a terminal railroad company whose terminal facilities are in Houston and vicinity. By its petition for said injunction, plaintiff charged that defendant was unlawfully discriminating against plaintiff in (1) assessing charges and (2) in providing switching services on line-haul intrastate and interstate traffic destined to or moving from defendant's public delivery tracks; and that defendant, unless restrained, would continue to so discriminate to plaintiff's competitive disadvantage.

Defendant's answer consisted of a plea in abatement, a general denial, and a special answer. In connection with its plea in abatement, defendant pointed out that plaintiff based its suit solely upon the provisions of R.C.S. Art. 6549, and defendant pled that said statute by its terms made the Railroad Commission the administrator of the relief therein provided to prevent discrimination by terminal railroads against common carriers (including line-haul railroads) with respect to either charge or service. And by its plea in abatement to the court's jurisdiction, defendant urged that plaintiff was by law obliged to apply to the Commission for relief and appeal from the Commission's order to the court in Travis County, having jurisdiction, if dissatisfied therewith. (We have omitted giving so much of the plea as related to the Interstate Commerce Commission.)

The court overruled defendant's plea in abatement, and, trying the case without a jury, rendered the judgment here appealed from, as stated above. In response to plaintiff's request, the court filed conclusions of fact and law. The evidence was apparently undisputed. The said conclusions of fact and law are unusually concisely drawn, and are appended to this opinion; the formal part thereof is omitted therefrom.

The plaintiff predicates its appeal upon three points, a copy of which is also appended to this opinion following the copy of the court's conclusions of fact and law.

The defendant has urged a cross point, complaining that the court erred in overruling defendant's plea in abatement to the court's jurisdiction. Since we have concluded that the court erred in overruling such plea to its jurisdiction, no purpose will be served in setting forth defendant's counterpoints.

### Opinion

R.C.S. Art. 6549 reads: "Terminal railways shall have all the rights and powers conferred by law upon railroads by Chapters 6 and 7 of this title, and when such railway is adjacent to any inland navigable stream or water body, it shall have the

612

right and power to construct, erect, operate and maintain all necessary and convenient facilities to accommodate and expeditiously handle the exchange of freight and passenger traffic with all steamship and other vessels and water craft using such waterways; and shall have the right to issue bonds in excess of its authorized capital stock under the direction of the Railroad Commission of Texas, in accordance with the stock and bond law regulating the issuance of stocks and bonds by railroads. Said commission shall fix the values of the property, rights and franchises of such railway company; and its stocks and bonds shall not exceed the amount authorized by said Commission in which jurisdiction over the issuance of the bonds herein authorized is hereby vested. *No such terminal company shall have the right to charge any railroad company, steamship, vessel or water craft for terminal facilities a greater amount than may be from time to time designated and established by said Commission, which shall have authority to establish and prescribe such rates and rules for the operation of all such terminal companies as will prevent discrimination by them against any common carrier with respect to either charge or service.* The provisions of Articles 6452, 6453 and 6454, shall apply to any and all orders, rulings, judgments and decrees of said Commission made, entered or held under the provisions of this law in respect to such terminal railway companies." (Emphasis added.)

Said statute was enacted in its present and final form in 1917. We omit giving any intermediate form in which the legislature framed the text of the statute. But same was first enacted in 1897, as a part of the statute relating to the purposes for which corporations might be created, and, as so enacted, reads: "(21) For the constructing, acquiring and maintaining and operating street railways and suburban belt lines of railways within and near cities and towns, for the transportation of freight * * *; provided, that all street or suburban railways engaged in tranporting freight *shall be subject to the control of the Railroad Commission.*" Gen.Laws 1897, c. 130, § 1. (Emphasis supplied.)

The Railroad Commission was created in 1891 by what is now Chapter 11, Title 112, Vernon's Ann.Civ.St. art. 6444 et seq. Section 22 thereof as enacted in 1891, provided: "The provisions of this act shall be construed to apply to and affect only the transportation of passengers, freight, and cars between points within this State; and this act shall not apply to street railways and suburban or belt lines of railways in or near cities and towns." Gen.Laws 1891, c. 51.

It may be noted in passing that, what was section 22 of the Act creating the Commission, has been incorporated in and carried forward as a part of Art. 6479, Chapter 11, Title 112, which article was last amended in 1933, Vernon's Ann.Civ. St. art. 6479. See, also, Art. 6445, Chapter 11, Title 112, which now gives the Commission jurisdiction expressly enlarged to include control over terminal railways.

Art. 6549, upon which plaintiff relies as the basis of its suit, does indeed attach to rights and powers which it confers upon terminal railroads the provision that: "No such terminal company shall have the right to charge any railroad company * * * for terminal facilities a greater amount than may be from time to time designated and established by said Commission * *."

■ But the statute then goes on to vest in the Commission administrative authority "to establish and prescribe such rates and rules for the operation of all such terminal companies as will prevent discrimination by them * * *." Thus, by the express terms of the statute, the remedy for any illegal discrimination, such as plaintiff here charges, is, in the first instance, to seek relief at the hands of the Commission, which has the power not merely to prevent discrimination, if any, but to prescribe rates to remedy unjust discrimination. In other words, the matter is expressly delegated to the jurisdiction of the Commission.

■ "It is now settled that the court acquires no jurisdiction over a subject-matter expressly delegated to the jurisdiction of the commission until it has entered its order thereon; and then only are the courts vested with jurisdiction to review the commission's action as evidenced by its order." Railroad

Commission of Texas v. Brown Express, Tex.Civ.App., 106 S.W.2d 327, 329.

Here plaintiff at most complains merely that defendant has followed and is following, and will continue to follow, a course violative of rights which were conferred upon plaintiff by Art. 6549. But even had defendant's course of dealing been so extreme as to violate rights conferred upon plaintiff by the Constitution of the State, it was within the power of the legislature to substitute an adequate legal remedy to prevent such violation, in lieu of injunctive relief. See Lone Star Gas Co v. State, 137 Tex. 279, 313, 153 S.W.2d 681.

It is plaintiff's contention that the Railroad Commission, by refraining for some forty years from taking any action to stop the course of action which plaintiff complains is discriminatory against it, has construed the statute to mean that it is here without jurisdiction. In such connection plaintiff cites Foster v. Railroad Commission, Tex.Civ.App., 215 S.W.2d 267. The cited authority holds that, where it is doubtful whether a statute empowers a department of State to act, the departmental construction to the effect that the statute confers no authority or duty on the department to act with respect thereto is entitled to much weight with the courts. Why, if the course of dealing, complained of by plaintiff as unlawful discrimination, violates Art. 6549, the Commission has not seen fit to prevent such course of dealing, we do not know. It may be that the Commission has not acted because no complaint has been made to it. It may be that the Commission has not acted because it does not deem the matter complained of is unjustly discriminatory. But the Commission could not, in the teeth of the statute to the contrary, consider that it has no authority or duty to prevent such discrimination as the statute denounces, and which the statute expressly authorized the Commission to correct.

We have refrained from any consideration on its merits of the cause of action as alleged by plaintiff. Nor have we considered what, if any, application to the facts of the case of United Gas Corporation v. Shepherd Laundries Co., Inc., 144 Tex. 164, 189 S.W.2d 485, may have. This,

because, when the plea in abatement is sustained, the only jurisdiction we have is to reverse the court's judgment, and order the cause dismissed.

The judgment is reversed, and cause dismissed.

### Findings of Fact.

I. Defendant, Houston Belt & Terminal Railway Company, is a terminal railway company organized under an act of the legislature of the State of Texas, being Chapter 109 of the General Laws of the Regular Session of the 29th Legislature 1905. See Rev.State. Art. 6549 and 1302, subdiv. 72.

II. The capital stock of the defendant is owned in equal proportions by The Beaumont, Sour Lake & Western Railway Company (Guy A. Thompson, Trustee); Gulf, Colorado and Santa Fe Railway Company; the St. Louis, Brownsville and Mexico Railway Company (Guy A. Thompson, Trustee); and Burlington-Rock Island Railroad Company, referred to in the record, and below, as the Proprietary Lines.

III. The Proprietary Lines and the plaintiff, Texas & New Orleans Railroad Company, are all line haul carriers by railroad.

IV. Under the operating agreement entered into between the Proprietary Lines and the defendant, Houston Belt & Terminal Railway Company, dated July 1, 1907, and amended July 1, 1937, the Proprietary Lines have trackage rights over all the tracks and lines of the defendant, under which, with their own power and crews, they operate their respective freight trains into and out of the defendant's switching yards.

V. The freight trains of the Proprietary Lines are made up and broken up in the defendant's yards by the defendant, pursuant to said operating agreement, the defendant using its own forces and power in rendering such service, the cost of which is paid by the Proprietary Lines as a user basis, in proportion to the number of cars handled for each.

VI. The defendant, as agent of the Proprietary Lines, and at their expense, borne on such user basis, performs for each of them all switching of freight between the

said yards of defendant and its team and industry tracks and freight station.

VII. Defendant has no interchange tracks with any of the Proprietary Lines, and does not conduct any interchange of cars or traffic with them or any of them.

VIII. The defendant, for itself on inter-terminal cars and for the Proprietary Lines, conducts a regular interchange of freight cars with the plaintiff as well as with International-Great Northern Railroad Company (Guy A. Thompson, Trustee) and Missouri-Kansas-Texas Railroad Company of Texas.

IX. Railroad Commission of Texas Switching Tariff No. 65, as incorporated in Railroad Commission of Texas Consolidated Tariff No. 1, provides for charges to be assessed on each movement between a team track on one line of railroad and a point of interchange with another line of railroad which has performed or is to perform a road haul. Said tariff provides that the charge for such a switching movement will not be absorbed by the line performing the road haul, but must be paid by the shipper, owner or consignee.

X. On Texas intra-state shipments arriving in Houston over plaintiff's lines, which are destined for a consignee located on or desiring to use a team or industry track of the defendant, the application of the above mentioned tariff provision requires a switching charge to be paid by the consignee, shipper or owner, for the movement from the HB&T-T&NO interchange track to a team or delivery track of the defendant.

XI. Similarly, on a Texas intra-state shipment arriving in Houston over the line of one of the Proprietary Lines, destined for a consignee situated on or desiring to use a team or delivery track of the plaintiff, the above tariff provision requires a switching charge to be collected from the consignee, shipper or owner, for the movement from said interchange track to a team track of the plaintiff.

XII. The defendant does not collect and has never collected any charge from a shipper, owner or consignee for switching between the defendant's freight yard and a team or delivery track of defendant any shipment arriving in or departing from Houston over the line of any Proprietary Line.

XIII. The defendant had been conducting its business and that of the Proprietary Lines in Houston in substantially the manner above stated for approximately forty (40) years before the filing of this suit.

XIV. The plaintiff has not attempted to procure from the Railroad Commission of Texas any relief from the difficulties, discrimination or handicaps of which it here makes complaint.

XV. The service demanded of the defendant by the plaintiff (movement of plaintiff's cars between their interchange track near plaintiff's Englewood Yard and the defendant's team tracks) is not the same service that the defendant performs for the Proprietary Lines (movement of cars between defendant's yard and its team tracks) and is not shown to be the equivalent thereof, in cost or otherwise.

### Conclusions of Law

I. This court has jurisdiction to hear this cause.

II. Defendant's method of conducting its business does not constitute a discrimination against plaintiff.

III. Plaintiff is not entitled to any relief.

### Plaintiff's Points of Error
### First Point

The trial court erred in concluding that the Defendant's method of conducting its business does not constitute a discrimination against the Plaintiff.

### Second Point

The trial court erred in refusing to grant to Plaintiff an injunction restraining the Defendant from refusing to perform for Plaintiff switching service without discrimination on cars in intra-state commerce from and to the public delivery team-tracks of Defendant, so long as this same service is performed for other line-haul common-carriers by rail, because Article 6549, Texas Revised Civil Statutes 1925, requires that Defendant transact its terminal business without discrimination against any com-

mon-carrier with respect to either charge or service.

### Third Point

The trial court erred in refusing to grant to Plaintiff an injunction restraining the Defendant from refusing to perform for Plaintiff switching-service, without discrimination on cars in interstate commerce from and to the public delivery team-tracks of Defendant, so long as this same service is performed for other line-haul common carriers by rail, because Article 6549, Texas Revised Civil Statutes 1925, requires that Defendant transact its terminal business without discrimination against any common carrier, with respect to either charge or service.