THE STATE, EX REL. SMILACK, *v.* BUSHONG, SUPT.

(No. 1025—Decided June 12, 1952.)

*Mr. Jack B. Dworken,* for petitioner.

*Mr. C. William O'Neill,* attorney general, *Mr. Ralph Bartlett,* prosecuting attorney, and *Mr. Larry Snyder,* for Roy E. Bushong, superintendent.

GUERNSEY, J. Oscar Smilack filed his petition in this court for a writ of habeas corpus alleging that he was unlawfully restrained of his liberty by Dr. R. E. Bushong, Superintendent of Lima State Hospital.

The cause is incorrectly captioned as it is not brought upon the relation of the state of Ohio and should be captioned "In the Matter of the Petition for a Writ of Habeas Corpus by Oscar Smilack." It was unnecessary to name anyone as defendant in the caption.

Upon the trial of this cause the only evidence introduced was a transcript of the proceedings had in the Common Pleas Court of Franklin County, under date of May 29, 1952, in the case of *State* v. *Oscar Smilack,* designated as number 32835 in such Common Pleas Court, which transcript is in the words and figures following, to wit:

"Mr. Barlett: 32835, *State* v. *Oscar Smilack,* and the charge is refusing to testify before a Committee of the General Assembly of the State of Ohio.

"Mr. Dworken: Your Honor, I am Jack Dworken of Cleveland. I represent the defendant in this case, and we enter a plea of not guilty and would like permission of the court to file pleadings raising the legal question involved in this matter, and we are willing to submit the case on the record.

"Mr. Bartlett: Your Honor—

"The court: You will be given two weeks in which to make—

"Mr. Dworken: Thank you, sir.

"Mr. Bartlett: Now, Your Honor please, before passing over this case, I desire to make a statement to the court.

"The court: You may proceed.

"Mr. Bartlett: This defendant, Smilack, while charged with the same crime or misdemeanor that the others are, is in somewhat of a different situation. He seems to be the financial agent for the communists here in this county, and he has given large sums of money from time to time. He has been milked, in other words, by some of these fronters for the outfit, to the extent that his own friends and family think that he has been made a sucker of.

"Several years ago his mother met a very violent death here in this county; an intruder going in the back door of the home, and the lady being later discovered in a brutally murdered condition, and, of

course, there was a great amount of questioning of this defendant and other members of the family, as well as neighbors, etc. And it is the feeling of people that know the man well that he cracked up under those circumstances, and that he has never been the same since then. He has had psychiatric treatment from time to time since that tragedy, and yesterday his father called me and asked to come to my office to talk to me and I told my secretary to return the call and tell the father he could come to see me any time he saw fit. Shortly afterwards he appeared in my office, and he and I visited quite a while, because he came from Dunkirk, Indiana, within eight miles of where I was born, and we knew many people in common, people that he had worked with and he dealt with in the past. And while we were in the course of that visit, one of the secretaries in the office came and said the son of Mr. Smilack, who was in my office, was there and wanted to see his father, and it was very important. His father asked me if I would let him in, and I said, 'I would rather finish my conversation with you, since you asked to come to see me, but you go on out and see what your son wants, and then come back.' So, after a while he came back and said the son was raising Cain, that he heard the father was there, and it was reported to me by someone in the prosecutor's office afterwards that he raised Cain that his father was there, and that he shouldn't tell me anything about the death of his mother or the fact that he was given care on certain visits from time to time, and that he said the father ought to be declared crazy. Now, this old man, the father, is a seventy year old man, and no more a communist than the court itself. A fine gentleman. He came back in and he said he would rather be called crazy than be called a communist. And at this time I am asking that the defendant, Oscar Smilack, be committed to Lima hospital for thirty days for observation and report as to his mental condition, and that

the report made by them be placed in our file here in this case.

"Mr. Dworken: Of course, I object to that, Your Honor.

"The court: The court, in passing upon the request of the prosecuting attorney on the facts which he has brought to the attention of the court, it seems that this is clearly indicated, and the court will therefore—

"Mr. Dworken: Your Honor, may I say something?

"The court: Why, yes.

"Mr. Dworken: I spent a day with this man recently. He was at that time with his wife and two boys, and I discussed this entire controversy, and I must say, from the conversation that I had with him, that he is just as sane as I am, and probably as Your Honor is. The man knows what he is talking about. He is standing on his rights. The question that was put to him, or the questions that were put to him, which he refused to answer, and, legally, he wasn't compelled to answer them, and in addition to that there was no order by anybody, the chairman included, whereby he was ordered to answer the questions, and, Your Honor—

"The court: Oh, no, let's don't go into that. That is beside this point on which you are before me.

"Mr. Dworken: Now, I don't think that Your Honor should go ahead and cause this man any more difficulty by ordering him to be examined at the Lima State Hospital, or at any other hospital. If Your Honor wants to have this man examined, we will have him examined by a competent physician right here, and either submit the report to you—

"The court: No, it is the order of the court that he be committed for a thirty-day period to the Lima State Hospital for observation and report, and an entry may be drawn accordingly.

"Mr. Bartlett: It will be filed, and he will go forthwith?

"The court: Yes.

"Mr. Bartlett: The sheriff's office will take the man, remand him to the jail, where he will be transferred to Lima.

"The court: That is right, yes.

"Mr. Dworken: Just a moment, Your Honor. Isn't this man allowed to have someone else examine him?

"The court: No, sir. I am sending him to Lima where we have psychiatrists that are trained and fully capable of making a proper examination, and reporting it to the court.

"Mr. Dworken: I would like to state he hasn't shown any—

"The court: That is all. Call your next case.

"Mr. Dworken: He made no statement—he made no statement to—

"The court: Who was that?

"Mr. Dworken: The defendant is here with me—

"Mr. Bartlett: Smilack the defendant.

"The court: No, now that is all. I have ordered the man committed, and an entry may be drawn accordingly. Call your next case.

"Mr. Bartlett: That is all, Your Honor.

"Mr. Dworken: Your Honor, can't he have time in which to straighten out his affairs?

"The court: I have ordered him to Lima.

"Mr. Dworken: All right.

"The court: That is all. Call your next case.

"Mr. Bartlett: The call list is completed, Your Honor."

From the return of the superintendent of Lima State Hospital to the petition it appears that Oscar Smilack is restrained in said hospital by said superintendent under a mittimus issued by the Common Pleas Court of Franklin County in said cause, which, omit-

ting caption and clerk's certificate, reads as follows:

"This day this cause came on to be heard and the defendant, Oscar Smilack, being in court and represented by counsel, it was suggested to the court that the defendant is not now sane, the court upon consideration thereof and being fully advised in the premises finds that the defendant should be committed to the Lima State Hospital, there to remain under observation.

"It is therefore ordered, adjudged and decreed that the sheriff of this county forthwith safely convey the defendant, Oscar Smilack, to the Lima State Hospital and there commit him to the care, custody and control of said hospital, he, the said Oscar Smilack, there to remain under observation for a period not exceeding one month, pursuant to the provisions of Section 13441-4, of the General Code of Ohio.

"John R. King,
"Judge"

"Approved:
"/s/ Ralph J. Bartlett
"Ralph J. Bartlett
"Prosecuting Attorney      (Seal)."

The indictment pending against the said Oscar Smilack in the Court of Common Pleas of Franklin County is predicated upon the provisions of Section 12845, General Code, reading as follows:

"Section 12845. Whoever, having been subpoenaed or ordered to appear before either branch of the General Assembly, or before a standing or select committee of the General Assembly, or either branch thereof, fails so to do, or, having appeared, refuses to answer a question pertinent to the matter under inquiry, or to produce, upon reasonable notice, books, papers or documents in his possession or under his control, pertinent thereto, shall be fined not less than one hundred dollars nor more than five thousand dollars."

It will be noted that the offenses charged in the indictment under the provisions of said section are misdemeanors and the penalty prescribed is a fine and not imprisonment.

While the mittimus above mentioned recites that Oscar Smilack is committed to the care, custody and control of the Lima State Hospital and there to remain under observation for a period not exceeding one month, pursuant to the provisions of Section 13441-4, General Code, the mittimus is also based upon the provisions of Section 13441-1, General Code.

The pertinent parts of said sections read as follows:

"Section 13441-1. If the attorney for a person accused of crime pending in the Court of Common Pleas, whether before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. * * *"

"Section 13441-4. In any case in which insanity is set up as a defense, or in which present insanity of the accused is under investigation by the court or jury, the court shall have power to commit the defendant to a local insane hospital, or the Lima State Hospital, where the defendant shall remain under observation for such time as the court may direct not exceeding one month; * * *."

The petitioner contends that his commitment to the Lima State Hospital for observation, as prescribed therein, is void for the reasons:

1. That Sections 13441-1 and 13441-4 are *in pari materia* and should be read and construed together

and, so read and construed, contemplate that before any person against whom an indictment is pending is committed to Lima State Hospital for observation he shall have notice that his present insanity is under investigation by the court in which said indictment is pending and be afforded an opportunity to be heard and to present evidence upon the issue of his present insanity.

2. That unless so construed the provisions of said Sections violate the provisions of the 14th Amendment to the Constitution of the United States that no state shall "deprive any person of life, liberty, or property, without due process of law."

3. That as shown by the transcript of the proceedings of the Common Pleas Court of Franklin County, which is in evidence in this case, petitioner was not given notice that his present insanity was under investigation by the court and was not afforded an opportunity to be heard or to present evidence upon the issue of his present insanity.

In considering these questions the following matters must be kept in mind:

1. While the Common Pleas Court is a court of general jurisdiction in criminal matters, it does not have general jurisdiction to commit to state hospitals either for observation or for definite or indefinite confinement, persons under indictment for the commission of offenses, and its exercise of jurisdiction in the respects mentioned is special and limited.

2. A distinction between a court of general jurisdiction and a court exercising limited or special jurisdiction is that in the first instance the judgment in and of itself presumes that all facts necessary in order for it to render a particular judgment existed and were duly found, and that every step necessary has been taken to give it jurisdiction. 21 Corpus Juris Secundum, 149, Courts, Section 96.

3. On the other hand, there is no presumption of jurisdiction where a court of general jurisdiction exercises, in a special statutory manner or otherwise than according to the course of the common law, special statutory powers not belonging to it as such court and not within its ordinary jurisdiction, since, under such circumstances the court stands, with respect to the special powers exercised, on the same footing with courts of limited and special jurisdiction, and the record of such court must show upon its face, a full compliance with the requirements in order to obtain jurisdiction. 21 Corpus Juris Secundum, 152, Courts, Section 96; *Wilson* v. *Lasure,* 36 Ohio App., 107, 172 N: E., 694; *Lewis* v. *Reid,* 117 Ohio St., 152, 157 N. E., 897; *In re O'Leary,* 32 Ohio Law Abs., 122.

4. Therefore the presumption as to the jurisdiction of a court of general jurisdiction is rebutted and overcome only by recitals in the record affirmatively showing lack of jurisdiction, and on the other hand no presumption exists whatever in favor of the jurisdiction of courts of limited or special jurisdiction. 21 Corpus Juris Secundum, 153, Courts, Section 97.

5. The judgments of courts of special and limited jurisdiction may be examined thoroughly for the facts and evidence necessary to sustain them, as their decisions do not furnish evidence of themselves to show jurisdiction and its lawful exercise and every requisite for either jurisdiction or its lawful exercise must appear upon the face of the proceedings or they are a nullity. 21 Corpus Juris Secundum, 19, Courts, Section 2.

6. Excess of jurisdiction may be defined as the state of being beyond or outside the limits of jurisdiction as distinguished from the entire absence of jurisdiction. Although the proceedings are within the general jurisdiction of the court, its judgments are void with respect to a particular case because the conditions which alone authorize the exercise of the jurisdiction in that

particular case are wanting, and hence the judicial power is not in fact lawfully invoked. Thus, a court may have jurisdiction of the subject matter and the party but its acts and order may nevertheless be in excess of its jurisdiction, as being something which it has no power to do, and in this manner any act of the court in violation of statutory requirements may be considered to be in excess of jurisdiction. 21 Corpus Juris Secundum, 37, Courts, Section 25.

7. Under commitment for observation to a state hospital the person committed is restrained of his liberty to the same extent he would be if committed to a jail or other public institution as penalty for an offense.

We turn now to a consideration of the provisions of Sections 13441-1 and 13441-4, General Code, upon which the commitment of petitioner is based.

It will be noted that Section 13441-1 prescribes the different sets of circumstances which must exist to warrant a Common Pleas Court in proceeding to examine into the question of the sanity or insanity of a person accused of crime pending in such court, while the pertinent provisions of Section 13441-4 prescribe that in any case in which insanity is set up as a defense, or in which present insanity of the accused is under investigation by the court or jury, the court shall have power to commit the defendant to a local hospital for insane, or the Lima State Hospital, where the defendant shall remain under observation for such time as the court may direct, not exceeding one month.

It will be noted that the authority of the court to commit for observation exists only when insanity is set up as a defense or when present insanity is under investigation by the court or jury.

In the instant case such power could exist only if the present insanity of the accused is under investigation by the court, as insanity was not pleaded as a defense and a jury was not impaneled for the purpose of conducting such investigation.

The word, "examine," as used in Section 13441-1, and the word, "investigation," as used in Section 13441-4, each contemplates a judicial inquiry.

"A 'judicial inquiry' investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. Ordinarily it involves a hearing and all that is thereby implied, including the reception of testimony. Action resulting from an inquiry judicial in nature must rest on legal evidence and be justified by established facts." 50 Corpus Juris Secundum, 568.

The word, "examination," as used in connection with legal proceedings is commonly understood to mean an examination under oath or affirmation. 32 Corpus Juris Secundum, 1147.

As the words, "examination" and "investigation," are used in the sense mentioned the "present insanity of the accused" would not be "under investigation" until some evidence had been introduced before the court upon the subject, and until some substantial evidence was introduced tending to prove that a reasonable doubt exists as to the sanity of the accused the court was without authority to make such commitment.

A judicial investigation or examination of necessity implies, the same as if written in the statute, that the accused should have notice thereof and an opportunity to offer such evidence as he might desire to offer and to be heard upon his own behalf.

The judicial examination or investigation, in the particulars above set forth, and notice to the accused of such examination or investigation and an opportunity afforded to him to offer evidence and be heard upon his own behalf were essential conditions precedent to the court exercising its special and limited jurisdiction of committing the accused for observation.

None of these essential elements appear in or from the judgment entry committing the accused, and the

fact of the nonexistence of such essentials appears from the transcript of the proceedings had in the Common Pleas Court, which transcript is in evidence in this court.

It is the duty of this court, if possible, to construe statutory provisions in such a manner as not to contravene Constitutional provisions of the United States and of this state.

The construction we have adopted provides the accused with notice and opportunity to be heard and consequently the statutes, as so construed, do not contravene the provisions of the 14th Amendment to the Constitution of the United States, above mentioned, which would be the case in the event that they should be construed as not providing for notice to the accused and opportunity to be heard. *Walters* v. *McKinnis*, 221 F., 746.

For the reasons mentioned, the Common Pleas Court was without jurisdiction or authority in law to commit the accused without giving the accused notice that the court was proceeding to examine into his sanity or insanity and without affording the accused the opportunity to present evidence and be heard upon his own behalf, and said commitment to the Lima State Hospital is void.

The petitioner will therefore be ordered discharged from the custody of Dr. R. E. Bushong, Superintendent of Lima State Hospital, and by him caused to be delivered into the custody of the sheriff of Franklin County, Ohio, to be held to answer said indictment, and subject to the orders of the Common Pleas Court of said county, and for further proceedings according to law.

It is further ordered that the state of Ohio pay the costs of this proceeding in the manner provided by law.

*Judgment accordingly.*

MIDDLETON, P. J., and AHL, J., concur.