303 P.2d 908

**POTASH COMPANY OF AMERICA,**
Plaintiff-Appellant,

v.

**NEW MEXICO PUBLIC SERVICE COM-
MISSION and Southern Union Gas Com-
pany, Defendants-Appellees.**

No. 6015.

Supreme Court of New Mexico.

Sept. 10, 1956.

Rehearing Denied Dec. 10, 1956.

Gilbert, White & Gilbert, Santa Fe, Lewis, Grant & Davis, Denver, Colo., Roy H. Blackman, Jr., Carlsbad, for appellant.

Richard H. Robinson, Atty. Gen., Alfred P. Whittaker, James B. Cooney, Sp. Asst. Atty. Gen., for New Mexico Public Service Commission.

Manuel A. Sanchez, Santa Fe, Atwood & Malone, Roswell, Willis L. Lea, Jr., Dallas, Tex., for Southern Union Gas Co.

SADLER, Justice.

The question for decision, prior to hearing this appeal on its merits, is whether the plaintiff below, the appellant here, should be denied the hearing in this proceeding now sought, by reason of its failure to exhaust the statutory remedy provided by the New Mexico Public Utility Act, 1953 Comp., c. 68, Art. 9, §§ 68–9–1 to 68–9–7, for reviewing orders of New Mexico Public Service Commission.

The appeal is from a judgment of the district court of Santa Fe County dismissing the amended complaint of Potash Company of America, as plaintiff, against the New Mexico Public Service Commission and Southern Union Gas Company, the parties joined as defendants in the amended complaint filed in the district court of Santa Fe County May 19, 1954. The parties to the appeal will be referred to hereinafter as follows: The appellant, who was plaintiff below, as the "Potash Company," or "plaintiff," and the defendants either by that name or as the "Commission" and "Southern Union," all as best serves clarification in each instance.

The controversy out of which the appeal arises originated in certain action taken by the Commission on the ex parte application of Southern Union putting into effect an interim rate change ordered by the Commission. The amended complaint not only sought to enjoin the Commission from enforcing the new rate but, as well, to recover from Southern Union excessive payments said to have been made for gas supplied under the new rate.

According to allegations of the amended complaint on or about April 30, 1948, the Potash Company and Southern Union entered into a modification of an existing contract under which the rate for gas furnished to former by the latter should be approximately 9 cents per MCF and obligating the plaintiff to take and pay for certain specified minimum quantities of gas. The modified contract also provided that it and said rate should be in full force and effect until April 30, 1956, but that in latter year the rate should be adjusted to reflect increases in cost to Southern Union; and providing, further, that it could not be altered by either party without written consent of the other. In due season and on October 11, 1948, the Commission entered its Order No. 96, whose effect was to authorize Southern Union to enter into such contract and to continue to charge plaintiff the rates therein specified until further order of the Commission.

So matters stood, says the amended complaint, when on or about December 18, 1948, Southern Union for the first time approached Potash Company requesting modification of the contract of 1948, representing that it anticipated an increase in the cost of gas to an extent making it desirable to amend the existing contract by raising the rate charged plaintiff; that again about October 8, 1953, Southern Union conferred with plaintiff on the subject of negotiating an increase in rates to be charged for gas based on substantial increases required to be paid by Southern Union to El Paso Natural Gas Company.

The amended complaint went on to say that while these negotiations were still pending, no settlement of Southern Union's request having been reached between the parties, Southern Union, nevertheless, on February 16, 1954, without any notice to the plaintiff, filed with the Commission a purported increase in rates for gas furnished plaintiff accompanied by a petition requesting that the increase indicated be made effective immediately. This filing was rejected by the Commission on February 17, 1954. On the same day, however, a second filing with the Commission was made announcing an increase in the contract rate from approximately 9 cents per MCF to approximately 17 cents per MCF, to be effective until the Commission could hold a hearing to determine and set a new and proper rate. The interim rate as thus increased was to be effective February 20, 1954. This filing, like the first one, was without notice to plaintiff.

Thereupon, and on February 17, 1954, as the amended complaint goes on to allege in paragraphs 11 and 12, thereof:

"11. On February 17, 1954, the Commission, apparently relying upon the ex parte statements of Southern Union in its petition and upon other matters as stated in its order, without notice or formal hearing or any hearing at which

the plaintiff was present, entered an interlocutory Order purporting to make the rate increase requested by Southern Union effective as of February 20, 1954. A copy of said order of the Commission is annexed to the Complaint as Exhibit F.

"12. On or about March 8, 1954, the plaintiff moved the Commission to dismiss and vacate its order of February 17, 1954, for lack of jurisdiction. Copy of such motion is annexed to the Complaint as Exhibit G. The Commission heard argument of counsel for the plaintiff and Southern Union on said motion on or about March 18, 1954. On or about March 25, 1954, the Commission denied the plaintiff's motion to dismiss, and refused to modify its order of February 17, 1954, and continued to take the position that the rate increase was effective as of February 20, 1954."

Actually, the amended complaint contained three claims. The first two were directed against Southern Union alone and were alternative claims to recover the amounts paid by the plaintiff to the utility for gas service for the period commencing February 21 and ending March 20, 1954, by virtue of the tariff rate in effect under the provisions of the Interlocutory Order and Notice of Hearing in Case No. 418 before the Commission which were over and above the rate formerly in effect for the gas service provided to the plaintiff by the utility.

The third claim was directed against both the Commission and Southern Union. It asserted that the action was instituted under the provisions of Section 74 of the Public Utility Act of New Mexico, § 68–10–2, 1953 Comp. Paragraphs 1, part of 10, 11, 12, 13, 14, 16, 17 and 18 were substantially identical to the allegations contained in the original complaint. The prayer sought declaratory judgment relief and injunctive relief. The Commission filed a Motion to Strike the allegations contained in paragraphs 2 through 9, part of paragraph 10 and paragraph 15 and its Motion to Dismiss the Third Claim. Southern Union filed its Motion to Dismiss the first and second claims asserted against it, its Motion to Strike the allegations sought to be stricken by the Commission and its Motion to Dismiss the Third Claim. On August 5, 1954, the motions were argued before the court. Thereafter briefs were submitted by the parties, the plaintiff submitting its brief on August 23, 1955, the defendants submitting a joint brief on October 13, 1955, and the plaintiff submitting its reply brief thereafter.

On June 29, 1955, the district court entered its Order. The Order dismissed the first and second claims without prejudice. The Order dismissed the third claim against both defendants, without prejudice, on the grounds that the plaintiff had not exhausted

its administrative remedy. The appeal herein is made from the Order so entered.

The matter of what was a just and reasonable rate proceeded before the Commission notwithstanding the filing by Potash Company of the action out of which this appeal arises in the district court of Santa Fe County on April 5, 1954, as hereinabove stated. Following the steps taken before the Commission in the matter, already mentioned above, and due notice to the parties herein, the Potash Company filed a motion asking the Commission to join as parties all consumers of gas from Southern Union, which motion was denied. The Potash Company next moved for a continuance which the Commission likewise denied. Thereupon, in due course, the hearings began consisting of three sessions, the first convening on May 28, 1954, and continuing for three days; the second was commenced June 28, 1954, and continued for five days; the third began August 23, 1954, lasted thirteen days, and concluded on September 9, 1954.

On January 26, 1955, in case No. 418, the docket number borne by this proceeding, the Commission entered its final order fixing a new rate at approximately 17¢ per MCF of gas, effective from February 20, 1954 (the effective date of the Commission's earlier order). The Potash Company filed its application for rehearing as provided by the Public Utility Act which was denied on March 16, 1955. Thereafter, on April 15, 1955, there was filed in the district court of Eddy County, New Mexico, a petition by Potash Company seeking the statutory review of the final Order of the Commission entered January 26, 1955, and of the Order denying application for rehearing entered March 16, 1955. Pursuant to the requirements of the Public Utility Act the Commission certified to the district court of Eddy County the record of all the testimony taken before the Commission in the matter and a transcript of all proceedings therein, which petition for review together with the record thereof is now pending, undisposed of, before the district court of Eddy County as cause No. 15,107 on the civil docket of said court.

We should state at this point that the Commission early in the proceedings before it entered an order requiring Southern Union to give a bond guaranteeing the refund of any money that might have been collected by it from Potash Company over and above what is found by the Commission as a just and reasonable rate following a hearing before it to fix the same. The bond mentioned was given and Potash Company has been protected throughout by such a bond.

In due course and seasonably, following the filing of its brief in chief by the Potash Company, the Commission filed herein its motion to dismiss this appeal, the material parts of which are, as follows:

"1. The question presented by the appeal from the order of dismissal, without prejudice, has become moot.

6

"2. The issue whether the Commission, in entering its Order of February 17, 1954 in Case No. 418, exceeded its jurisdiction has become moot.

"3. Matters have occurred since the institution of the action below and prior to, and pending this appeal, as set forth in the Opinion and Order of the Commission entered in Case No. 418 before it on January 26, 1955 (a copy of said Opinion and Order being attached hereto as Exhibit 1), and set forth in the Affidavit of L. W. Leibrand, Chairman of the Commission, attached hereto as Exhibit 2, reciting the events subsequent to January 26, 1955 relating to such Case No. 418, which include the statutory review of the Commission's action in Case No. 418 instituted by the Appellant in the District Court of Eddy County, New Mexico invoking the jurisdiction of that Court, these matters render any judgment which might be entered herein ineffectual since the Commission has lost jurisdiction of the proceeding in Case No. 418 before it, a preliminary part of which was the Interlocutory Order and Notice of Hearing attacked by Appellant in the Action below.

"4. The appeal herein seeks a review of the action taken by the Commission in Case No. 418 in a manner not permitted by the method prescribed by statute for review and appeals."

We first heard counsel argue orally the motion to dismiss which, incidentally, was not joined in by Southern Union, and reserved ruling thereon pending hearing on the merits. At the same time we ordered the Commission to file its answer brief, the Southern Union having done so on same day the Commission filed its motion to dismiss. The cause was later argued at length on the merits and, now, with the cause before us, both on the motion and the merits, orderly treatment demands disposition of the motion first. If sustained we do not reach the merits. The trial court sustained the motion upon the stated ground the Potash Company had failed to exhaust its statutory remedy, a conclusion with which we are compelled to agree.

Counsel for the Potash Company strongly urge justification for this action is to be found in Section 74 of the Public Utility Act, 1953 Comp. § 68–10–2, reading as follows:

"In case the commission or its members shall undertake to act in excess of its jurisdiction and authority conferred under this act (68–3–1 to 68–11–5), or without jurisdiction; or in case the said commission or its members shall undertake to exercise rights or privileges not conferred upon it by this act or by law; or in case the said commission or its members shall fail or refuse in the performance of any duties or obligations imposed upon it by the

terms of this act, then the person interested or whose rights are affected may bring suit by mandamus, prohibition, injunction, or other appropriate remedy against the said commission in its statutory name in this act provided, to compel performance of the duties and obligations imposed upon said commission by this act, or to restrain said commission and its members from the exercise of jurisdiction not by this act conferred. Consent of the state is hereby expressly given to the maintenance of such suits against said commission. Any such action shall be brought against said commission in the district court of Santa Fe County, New Mexico, or in the district court of the county in which the complaint or controversy arose. Any judgment or decree entered against the commission shall be binding upon the commission and each and every member thereof."

There is nothing in the foregoing section affording proof that the Commission in the proceedings before it in the matter in hand has acted either without or in excess of its jurisdiction. Indeed, a careful study of our Public Utility Act is satisfying that in entertaining the proceeding before it which gave rise to the present action, the Commission was moving strictly in conformity with the act creating it to determine one of the major questions submitted to its jurisdiction—a question of rates. 1953 Comp. § 68–5–4, vests in the Commission express jurisdiction, among other things, to regulate and supervise every public utility as respects its rates. It provides:

"The commission shall have general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations, and in respect to its securities, all in accordance with provisions and subject to the reservations of this act (68–3–1 to 68–11–5), and to do all things necessary and convenient in the exercise of such power and jurisdiction. * * *"

1953 Comp. § 68–6–1, provides:

"Every rate made, demanded or received by any public utility shall be just and reasonable."

Section 68–6–6 prohibits any unreasonable preference or advantage to any corporation or person as to rates or service. And 1953 Comp. § 68–6–7 contains express language conferring power on the Commission, by unilateral action, to make a change in rates, provided hearing on what is a fair and reasonable rate follows in due season on proper notice and an opportunity for all interested parties to be heard. Among other things, the section mentioned provides:

"Unless the commission otherwise orders, no public utility shall make any

change in any rate which has been duly established except after thirty (30) days' notice to the commission, which notice shall plainly state the changes proposed to be made in the rates then in force, and the time when the changed rates will go into effect. The utility shall also give such notice of the proposed changes to other interested persons as the commission in its discretion may direct. All proposed changes shall be shown by filing new schedules, or shall be plainly indicated upon schedules filed and in force at the time and kept open to public inspection. *The commission, for good cause shown, may allow changes in rates, without requiring the thirty (30) days' notice, under such conditions as it may prescribe.* * * * " (Emphasis ours.)

In this connection, although not controlled by the Public Utility Act with which we are now concerned, one of the matters of public concern and discussion over the years since statehood has been on the very issue of the ability of public utilities to simply put into effect a change in rates by filing a new tariff without an increase ascertained and declared by the tribunal having jurisdiction of rates for the particular utility. Compare, State Corporation Commission v. Mountain States Tel. & Tel. Co., 58 N.M. 260, 270 P.2d 685.

It requires only a cursory examination of the telephone case just cited, and this one to demonstrate that the action here challenged is exactly what Mountain States Tel. & Tel. Co. in the earlier case attempted, namely, to put into effect an increase in rates of its own motion. In so far as the mechanics of the case in the manner of its initiation are concerned, the real difference between that case and this lies in the fact that instead of approving the attempt to put the raise into immediate effect and test its reasonableness later upon notice, the State Corporation Commission forbade putting into effect the operative portion of the order pending a hearing.

In the instant case, the Commission having jurisdiction of Potash Company on such matters approved the application to put the proposed rate into immediate effect and provided for a hearing later. There, in the telephone case, the prayer for immediate effect to the raise was denied, except upon conditions, one of which was the giving of a bond for reimbursement of any part of the raise held to be excessive. The Commission imposed a like condition here. It thus is seen what a narrow line divides the two cases in so far as the exercise of jurisdiction by the two separate Commissions is involved.

Unquestionably, when this matter came on for hearing before the learned trial judge, he was mindful of the provisions of 1953 Comp. § 68–10–2, relative to invoking his jurisdiction on the equity side to restrain the exercise by the Commission of

acts entirely beyond or in excess of his court's jurisdiction. After all, such power inheres in a court of equity and a mere declaration of the power in the section invoked adds no new strength to the power. Compare Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 480, 1 P.2d 116. At the same time, the trial judge could see the overall picture of the Public Utility Act, enveloping the Commission with an aura of broad power and jurisdiction to determine just and reasonable rates and setting up a complete remedy within the framework of the Act for testing their propriety and reasonableness. See 1953 Comp. §§ 68–9–1 to 68–9–7. The first section in Article 9 of this Chapter, reads:

"Any party to any proceeding before the commission may file a petition in the district court of the county in which the complaint or controversy before the commission had its origin, asking for a review of the commission's final orders therein, and charging in said petition that said order or orders are unreasonable and/or unlawful. * * * Every petition for review shall state briefly the nature of the proceedings before the commission, and shall set forth the order complained of and the grounds upon which the same is claimed to be unreasonable and/or unlawful upon which the petitioner will rely in the district court. Any person whose rights may be directly affected by said review may appear and become a party, or the court may upon proper notice order any person to be joined as a party."

There follow in this Article of Chapter 68, provisions setting up all the machinery for notice, trial procedure, judgment, and appeal. The Potash Company was familiar with these provisions of the Public Utility Act. Indeed, it already has set in motion the proceedings for a full and complete statutory review before the district court of Eddy County which, of course, will pass upon the very order whose entry the Potash Company now claims is beyond and in excess of the Commission's powers to make and enter. For us to enter upon a hearing of this case upon the merits, at this time, would be to render *res adjudicata* the prime issue to be determined in the statutory review now pending before the district court of Eddy County in the case mentioned and render further proceedings there a mere formality.

From all said on the merits in briefs filed here, we well may assume the trial court in the proceeding pending there will be called upon to render some important decisions on how far the Commission may go in changing a so-called contract rate, after the public interest has entered the equation. The authorities are not all one way on the proposition by any means. If not careful, however, we shall be doing the very thing the Potash Co. has asked

10

us to do, passing on the merits, so we shall proceed no further along this line.

The precise question before us now is whether Potash Company should have exhausted its statutory remedies before invoking the aid of equity. On several occasions we have furnished an affirmative answer to the inquiry in similar situations. See, Associated Petroleum Transport v. Shepard, 53 N.M. 52, 201 P.2d 772; American Refrigerator Transit Co. v. Shepard, 53 N.M. 271, 206 P.2d 551; Smith v. Southern Union Gas Co., 58 N.M. 197, 269 P.2d 745, and the very late case of Andrews v. Walker, 60 N.M. 69, 287 P.2d 423. See, also, from other jurisdictions, Croydon Syndicate v. Consolidated Edison Co., Sup., 72 N.Y.S.2d 846; Ethington v. Wright, 66 Ariz. 382, 189 P.2d 209; Arizona Public Service Co. v. Southern Union Gas Co., 76 Ariz. 373, 265 P.2d 435; Lemoyne Arms, Inc. v. Central New York Power Corp., 191 Misc. 709, 76 N.Y.S.2d 703; Atlantic Greyhound Corp. v. North Carolina Utilities Comm., 229 N.C. 31, 47 S.E.2d 473; Leighton v. New York Tel. Co., Sup., 84 N.Y.S.2d 369; Southwestern Bell Tel. Co. v. State, 202 Okl. 291, 214 P.2d 715; Texas & N. O. R. Co. v. Houston Belt & Terminal Ry. Co., Tex.Civ.App., 227 S.W.2d 610; Interstate Natural Gas Co. v. Southern California Gas Co., D.C., 103 F.Supp. 317; Valley & Siletz R. Co. v. Flagg, 195 Or. 683, 247 P.2d 639, and United Merchants & Mfrs. v. South Carolina Electric & Gas Co., 4 Cir., 208 F.2d 685, 687.

We think the language of the United States Circuit Court of Appeals of the 4th Circuit in United Merchants & Mfrs. v. South Carolina Electric & Gas Co., supra, may very aptly be applied to efforts of plaintiff in the case at bar in so far as the functions of the courts and utility commissions are concerned. Among other things, the court said:

"We think this was a case for the Commission, with the right of appeal to the South Carolina courts. The jurisdiction of the Commission over public utility rates is plenary. Even had Carolina Electric given to United the contract claimed by United, this contract would have required approval by the Commission.

"It is not necessary for us to rule technically that United's civil action against Carolina Electric is a collateral attack upon a decision of the Commission. *It is, at least, under the guise of a civil action for fraud, an attempt to by-pass the Commission, which should not be permitted.* And there are many reasons justifying the refusal of a federal court to interfere, through the instant civil action, with the orderly functioning of the machinery set up by South Carolina for the control of rates to be charged by a public utility.

"It is at least an open question whether the alleged contract here between United and Carolina Electric is opposed to public policy. Certainly such contracts should be viewed with suspicion by the courts." (Emphasis ours.)

We think the order appealed from is correct and should be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN and KIKER, JJ., concur.

McGHEE, J., dissenting.

McGHEE, Justice (dissenting).

I am unable to agree with the majority opinion.

Section 74 of our Public Utility Act, § 68–10–2, N.M.S.A.1953 gives the right of immediate action in court when the Commission or its members undertake to act in excess of its jurisdiction and authority conferred by the act, or without jurisdiction, so our decisions under other administrative acts which do not have such a provision, that an aggrieved party must await his administrative remedies, do not, in my opinion, apply in this case. Furthermore, State Corporation Comm. v. Mountain States Tel. & Tel. Co., 1954, 58 N.M. 260, 270 P.2d 685, relied upon by the majority, involved a constitutional provision which bears no similarity whatever to the provisions of the Public Utility Act.

We said in the case of In re Field's Estate, 1936, 40 N.M. 423, 60 P.2d 945, 947:

"There are three jurisdictional essentials necessary to the validity of every judgment, to wit, jurisdiction of parties, jurisdiction of the subject matter, and power or authority to decide the particular matters presented, Protest of Gulf Pipe Line Co., 168 Okl. 136, 32 P.2d 42; Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914, and the lack of either is fatal to the judgment, Reynolds v. Stockton, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464."

The following authorities describe the meaning of "excess of jurisdiction":

"Court may have jurisdiction of subject matter and party, but its acts and order may nevertheless be in excess of its jurisdiction, as being something which it has no power to do, and in that manner any act of the court in violation of statutory requirements may be considered to be in 'excess of jurisdiction'." 15A Words and Phrases, Pocket Part, digesting State ex rel. Smilack v. Bushong, 1952, 93 Ohio App. 201, 112 N.E. 2d 675, 681.

"'Excess of jurisdiction, as distinguished from the entire absence of jurisdiction, means that the act, although within the general power of the judge,

is not authorized and therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting, and hence, the judicial power is not in fact lawfully invoked.' 15 C.J. p. 729, par. 24." In re Martin's Estate, 1939, 31 Cal.App.2d 680, 88 P.2d 755, 757.

" '* * * Weintraub v. Superior Court, 91 Cal.App. 763, 267 P. 733 quotes with approval from Broom v. Douglass, 175 Ala. 268, 57 So. 860, 44 L.R.A.,N.S., 164, Ann.Cas.1914C, 1155, as follows: " 'By "excess of jurisdiction," as distinguished from the entire absence of jurisdiction, we understand and mean that the act, though within the general power of the judge, is not authorized, and therefore void, with respect to the particular case because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked.' " ' " In re Knox' Estate, 1942, 52 Cal.App.2d 338, 126 P.2d 108, 112.

Did the Commission exceed its authority in its ex parte change of the contract rate to 17¢ per thousand feet of gas to be immediately effective and to continue until it had the hearing which it subsequently held? I believe it did for the reasons to be now stated.

The sections of the utility act governing rate changes are §§ 39, 43 and 50, § 68–6–3, § 68–6–7, and § 68–8–1, N.M.S.A.1953, which read:

Section 39: "Under such rules and regulations as the commission may prescribe, every public utility subject to the jurisdiction of the commission, shall file with the commission, within such time and in such form as the commission may designate, schedules showing all rates established by it and collected or enforced, or to be collected or enforced, within the jurisdiction of the commission. The utility shall keep a copy of such schedules open to public inspection under such rules and regulations as the commission may prescribe."

Section 43: "Unless the commission otherwise orders, no public utility shall make any change in any rate which has been duly established except after thirty (30) days' notice to the commission, which notice shall plainly state the changes proposed to be made in the rates then in force, and the time when the changed rates will go into effect. The utility shall also give such notice of the proposed changes to other interested persons as the commission in its discretion may direct. All proposed changes shall be shown by filing new schedules, or shall be plainly indicated upon schedules filed and in force at the

time and kept open to public inspection. The commission, for good cause shown, may allow changes in rates, without requiring the thirty (30) days' notice, under such conditions as it may prescribe. All such changes shall be immediately indicated upon its schedules by such public utility.

"Whenever there is filed with the commission by any public utility any schedule proposing a new rate or rates, commission may, either upon complaint or upon its own initiative, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate or rates; and pending such hearing and the decision thereon the commission, upon filing with such schedule and delivering to the utility affected thereby a statement in writing of its reasons therefor, may at any time before they become effective, suspend the operation of such rate or rates, but not for a longer period than ninety (90) days beyond the time when such rate or rates would otherwise go into effect unless the commission shall find that a longer time will be required, in which case the commission may extend the period for not to exceed six (6) months; Provided, and notwithstanding any such order of suspension, the public utility may put such suspended rate or rates into effect on the date when it or they would have become effective, if not so suspended, by filing with the commission a bond in a reasonable amount approved by the commission, with sureties approved by the commission, to the persons entitled thereto the amount of the excess, if the rate or rates so put into effect are finally determined to be excessive; or there may be substituted for such bond, other arrangements satisfactory to the commission for the protection of the parties interested. If the public utility fails to make refund within thirty (30) days after such final determination any person entitled to such refund may sue therefor in any court of this state of competent jurisdiction and be entitled to recover, in addition to the amount of the refund due, all court costs, but no suit may be maintained for that purpose unless instituted within one (1) year after such final determination. Any number of persons entitled to such refund may join as plaintiffs and recover their several claims in a single action; in which action the court shall render a judgment severally for each plaintiff as his interest may appear. During any such period of suspension the commission may, in its discretion, require that the public utility involved shall furnish to its consumers or patrons a certificate or other evidence of payments made by them under the rate or rates which the public utility has put into operation in excess of

the rate or rates in effect immediately prior thereto.

"If, after such hearing, the commission finds any such proposed rate or rates to be unjust, unreasonable, or in anywise in violation of law, the commission shall determine the just and reasonable rate or rates to be charged or applied by the utility for the service in question, and shall fix the same by order to be served upon the utility; and such rate or rates are thereafter to be observed until changed, as provided by this act (68–3–1 to 68–11–5)."

Section 50: "Upon a complaint made and filed by any municipality, or by any person or party affected, that any rate, service regulation, classification, practice, or service in effect or proposed to be made effective is in any respect unfair, unreasonable, unjust, or inadequate, the commission may proceed, if the commission finds probable cause for said complaint, and without such complaint, the commission, whenever it deems that the public interest or the interest of consumers and investors so requires, may proceed, to hold such hearing as it may deem necessary or appropriate; but no such hearing shall be had without notice, and no order affecting such rates, service regulations, classifications, practice, or service complained of shall be entered by the commission without a hearing and notice

thereof. Any utility may make complaint as to any matter within the provisions of this act (68–3–1 to 68–11–5) affecting it."

The Natural Gas Act, 52 Stat. 821, 15 U.S.C.A. § 717 et seq. and Title II of the Federal Power Act, 49 Stat. 847, 16 U.S.C.A. § 824 et seq. substantially parallel our Public Utility Act insofar as provisions for changing rates are concerned. In fact, the Commission in its answer brief makes the following appraisal:

"Section 43 of the Public Utility Act, prescribes the 'rate filing' procedure. Its counterpart, substantially to the same effect, is found in many of the regulatory acts adopted by about 36 of the states, and also the Federal Natural Gas Act, sections 4(d) and 4(e), the Federal Power Act, section 205(d) and (e), and the Interstate Commerce Act, sections 6(3) and 15(7) [49 U.S.C.A. §§ 6(3), 15(7)]."

There is, as the majority opinion states, a division among the state courts as to whether a public utility may change a contract rate by following the rate-filing procedure and securing the approval of the commission, or by the commission letting it go into effect by failure to order a stay pending a hearing.

The United States Supreme Court has recently construed the rate-making sections of the Natural Gas and Federal Power

Acts in the companion cases of United Gas Pipe Line Co. v. Mobile Gas Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 and Federal Power Comm. v. Sierra P. P. Co., 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388.

Before beginning discussion of these cases, it might be well to note the Natural Gas Act contains a provision for private rate contracts but requires them to be filed with the commission, § 4(c), while our statute refers to them in only one section, Section 27, § 68–5–15, N.M.S.A.1953, where it states private rate contracts may be made between municipalities and public utility companies. There are many of these contracts in New Mexico and they have long been recognized by our Public Service Commission. By one of its rules all such contracts between private users and utilities are required to be filed with the Commission and it has been its practice to approve them. Certainly there is nothing in our act declaring them illegal.

The question presented for decision in the Mobile case, supra, was stated to be whether under the Natural Gas Act a regulated natural gas company furnishing gas to a distributing company under a long-term contract could, without the consent of the distributing company, change the rate specified in the contract simply by filing a new rate schedule with the Federal Power Commission.

In the course of the Mobile opinion it is said [350 U.S. 332, 76 S.Ct. 378]:

"The provision of the Natural Gas Act directly in issue here is § 4(d), which provides that 'no change shall be made by any natural-gas company in any such (filed) rate * * * or contract * * * except after thirty days' notice to the Commission', which notice is to be given by filing new schedules showing the changes and the time they are to go into effect. It is argued that this provision authorizes a natural gas company to change its rate contracts simply by filing a new schedule of rates, to go into effect in no less than thirty days. On its face, however, § 4(d) is simply a prohibition, not a grant of power. It does not purport to say what is effective to change a contract, any more than § 4(c) purports to define what constitutes a 'contract' that may be filed with the Commission. The section says only that a change *cannot* be made without the proper notice to the Commission; it does not say under what circumstances a change *can* be made. Absent the Act, a unilateral announcement of a change to a contract would of course be a nullity, and we find no basis in the language of § 4(d) for inferring that the mere imposition of a filing-and-notice requirement was intended to make effective action which would otherwise be of no effect at all. In short, § 4(d)

on its face indicates no more than that otherwise valid changes cannot be put into effect without giving the required notice to the Commission. To find in the section a further purpose to empower natural gas companies to change their contracts unilaterally requires reading into it language that is neither there nor reasonably to be implied."

The court held where the rate-filing section was followed, the commission could only deny the rate where it was found to be unreasonable following a hearing, and that any change in contract rates could only be made under the provisions of section 5(a), (the same as our section 50, set out supra) and after a hearing, saying:

"The powers of the Commission are defined by §§ 4(e) and 5(a). The basic power of the Commission is that given it by § 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be 'unjust, unreasonable, unduly discriminatory, or preferential'. This is neither a 'rate-making' nor a 'rate-changing' procedure. It is simply the power to review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them. Section 5(a) would of its own force apply to all the rates of a natural gas company, whether long-established or newly changed, but in the latter case the power is further implemented by § 4(e). All that § 4(e) does, however, is to add to this basic power, in the case of a newly changed rate or contract (except 'industrial' rates), the further powers (1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period and (2) thereafter to make its order retroactive, by means of the refund procedure, to the date the change became effective. The scope and purpose of the Commission's review remain the same—to determine whether the rate fixed by the natural gas company is lawful."

In the Sierra case, however, it was stated it was immaterial under which section the application was filed, provided the procedure for hearing and proper findings was followed, but the order could only have prospective effect.

The Potash Company contends a contract rate may only be changed by following a filing under section 50 of our Public Utility Act, but I believe the notice of hearing, hearing and a finding the public interest requires an increase in rate are the essentials, but that the Commission exceeds its authority when it allows an increase ex parte and then makes the increase retroactive following the hearing.

The Supreme Court held the Natural Gas Act gave the gas company no power to change its contracts unilaterally and that

the new schedule was a nullity insofar as it purported to change the rate set by its contract with the Mobile corporation—that the contract rate remained the only lawful rate.

In the Sierra case, Pacific Gas & Electric Company, by following the rate-filing procedure prescribed by § 205(d) of the Federal Power Act, supra, had sought to abrogate a contract rate and establish a higher one. The Federal Power Commission suspended the effective date of the new rate until a later date and initiated a proceeding to determine its reasonableness. Sierra Power was permitted to intervene in the proceeding, but its motion to reject the filing on the ground that Pacific Gas & Electric Company could not thus unilaterally change the contract was denied. After completion of the hearings the commission reaffirmed its refusal to reject the filing and held the new rate not to be "unjust, unreasonable, unduly discriminatory, or preferential." (See 7 P.U.R.3d 256.)

On Sierra's petition for review, the Court of Appeals for the District of Columbia, 96 U.S.App.D.C. 140, 223 F.2d 605, holding that the contract rate could be changed only upon a finding by the commission that it was unreasonable, set aside the commission's order and remanded the case with instructions to the commission to dismiss the § 205(e) proceeding, but without prejudice to the institution of a new proceeding under § 206(a) to determine the reasonableness of the contract rate.

The Supreme Court held the unilateral filing of the new rate under § 205(d) and the approval of the new rate by the commission under § 205(e) were ineffective to supersede Pacific Gas and Electric's contract with Sierra.

It was also held the commission had the undoubted power under § 206(a) to prescribe a change in contract rates whenever it determined such rates to be unlawful. It was said [350 U.S. 348, 76 S.Ct. 371]:

"* * * While this power is limited to prescribing the rate 'to be thereafter observed' and thus can effect no change prior to the date of the order, the Commission's order here, if based on the necessary findings, could have been effective to prescribe the proposed rate as the rate to be in effect prospectively from the date of the order, June 17, 1954. If the proceedings here satisfied in substance the requirements of § 206(a), it would seem immaterial that the investigation was begun as one into the reasonableness of the proposed rate rather than the existing contract rate.

"The condition precedent to the Commission's exercise of its power under § 206(a) is a finding that the existing rate is 'unjust, unreasonable, unduly discriminatory or preferential'. * * *"

18

I agree with this statement, and would have the Court approve the rule of the Mobile and Sierra cases made under statutory provisions almost identical with our Public Utility Act, that a contract rate may not be changed by the utility under a mere rate-filing procedure, or by the commission in an ex parte order; but that a contract rate may only be changed, as heretofore indicated, after a hearing and finding a change is required in the public interest—that neither the filing of a new rate nor an order of the commission without notice, hearing and the requisite findings as to the public interest may change a contract rate. I believe it should further be declared that when, in this case, the Commission made and enforced its ex parte order, it was acting in excess of its authority and jurisdiction.

It is true when the case reached us the rate case had been removed to the District Court of Eddy County and the courts could not make an effective order against the Commission as to its interim rate, but there still remained the case of the Potash Company to recover the excess it paid under the interim rate, and I am convinced it should be allowed to recover such payments. The majority hold this to be a matter for determination of the District Court of Eddy County along with the rate case, thus nullifying the provision of Section 74, supra.

For the reasons stated, I dissent.